## HENRIETTA E. RYAN, Respondent, v. LAWRENCE J. RYAN, Appellant.

### Kansas City Court of Appeals, May 29, 1911.

1. **DIVORCE: Condition Intolerable.** Where a husband beats his wife and calls her foul names in the presence of his own children and strangers, and treats her with contempt before the world, her condition is thereby rendered intolerable.

2. ———: **Loveless Marriage.** Because a woman marries for convenience solely, unmingled with any affection whatever for her husband, does not effect her rights under the law of the land.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*Eugene W. Nelson* and *Willard P. Cave* for appellant.

The court erred in granting the decree of divorce, as the evidence shows that plaintiff is not the injured and innocent party. (a) A party seeking a divorce must, as in a court of equity, come into court with clean hands and must be both an injured and innocent party. Tarlotting v. Tarlotting, 82 Mo. App. 201; Morrison v. Morrison, 62 Mo. App. 299; Lawler v. Lawler, 76 Mo. App. 637. (b) Where both parties use harsh or questionable language to each other, plaintiff is not entitled to a divorce. Holschbach v. Holschbach, 134 Mo. App. 247; Wrangling due to lack of conciliatory temper in both parties is not an indignity. Griesedieck v. Griesedieck, 56 Mo. App. 94. (c) An indignity to be intolerable in the statutory sense must amount to a specie of mental cruelty. Holschbach v. Holschbach, 134 Mo. App. 257; Goodman v. Goodman, 80 Mo. App. 274. (d) In divorce proceedings an appellate court will examine the evidence for itself and draw its own conclusion therefrom not being bound by the finding of facts made by the trial judge. Tarlotting v. Tarlotting, 82 Mo. App. 200; Morris v. Morris, 60 Mo. App. 86.

*J. W. Hays* and *M. J. Lilly* for respondent.

We find no occasion to disagree with counsel for defendant, in their citation of authorities to the effect that there must be an "injured and innocent party," and that, it is true that in divorce proceedings, an appellate court will examine the evidence itself and draw its own conclusion therefrom, not being bound by the finding of facts made by the trial judge, but when the testimony was oral and is conflicting on account of the superior advantages possessed by the trial judge for weighing

the testimony and judging of its credibility, an appellate court will give much deference to his conclusion of fact. Tarlotting v. Tarlotting, 82 Mo. App. 200.

BROADDUS, P. J.—This is a suit for divorce. Plaintiff and defendant were married at New London, Missouri, in May, 1905, and they lived together as man and wife until May, 1910. The plaintiff in her petition alleges "that defendant wholly disregarding his duties as the husband of plaintiff has been guilty of such gross, vile, ugly, indecent and barbarous treatment toward this plaintiff as to render her condition intolerable in this, to-wit: That prior to the marriage of plaintiff and defendant herein, defendant was formerly married, and of such marriage there were born and are now living three children now of the ages of fifteen, thirteen and eight respectively; that the above named three children have been in the home and plaintiff has cared for them and endeavored to raise them as though they were her own children.

"That commencing within a year of their marriage this defendant has continuously and on the slightest provocation, and without any fault on the part of plaintiff whatever assaulted plaintiff, and such assaults as the years went by became so frequent and violent that plaintiff feared for her life, and that in addition to the various times that plaintiff has been assaulted by defendant the defendant has applied to plaintiff the most venomous and ugly epithets known and used by the meanest, lowest and most wicked men, such as 'God damned bitch,' 'God damned whore' and would use such language and apply the same to plaintiff in the presence of his children by a former marriage and their own child by their marriage; and that defendant would, and did on various occasions use such language toward this plaintiff in the presence and hearing of other people." Other similar charges are made against defendant.

156 App.—42

The defendant in his answer denied all the allegations of said petition. The suit was begun in the Hannibal Court of Common Pleas and was taken by change of venue to the circuit court of Randolph county.

The court granted the prayer of plaintiff, decreed her absolute divorce from defendant, the care and custody of her infant child, two thousand dollars alimony in gross, fourteen dollars per month until January, 1911, for the support and maintenance of ' said minor child, after which time plaintiff was allowed ten dollars per month for support and maintenance of such child. Defendant appealed.

The plaintiff and defendant had never met before the day on which they were married. A short while before that time plaintiff, who was working in Buffalo, New York, inserted an advertisement in a newspaper in St. Louis asking for a position as pianist. It was this advertisement which led to a correspondence by letter between the parties which finally resulted in defendant sending money to plaintiff to defray her expenses to Hannibal where they met and drove to New London and were married.

The plaintiff was questioned while testifying as follows: "Did you have any property of your own at the time you married him?" She answered, "No, sir, that is the reason I married him. I had been working and did not have a home, and this came so late in my life— I was eighteen years old when I had to earn my own living." She stated that she did not love him at any time. According to her testimony the defendant was a course, brutal man and that he beat her within five months after their marriage; that he called her a bitch, whore and chippy in the presence of their children and other persons; and that he abused her almost daily and taught his eldest child to abuse and curse her; and that during the whole time of their married life she endeavored to do her duty as his wife.

The testimony of other witnesses was to the effect that defendant did not treat plaintiff with respect at his own home while in the presence of visitors and on one occasion called her a "damn fool." On another occasion when plaintiff and a lady witness on a visit from Ohio had gone to church on a Sunday evening and did not return until about 10 o'clock, defendant had the door locked and after some delay unlocked it and let them in. Some words of dispute were used during which defendant abused plaintiff; that he put his feet on the center table and said he supposed they were out with other men.

A witness who lived within a few feet of the parties on one occasion heard a quarrel between them in which defendant called his wife a "God damn bitch;" that she did not see him hit her but heard her scream. The evidence of other witnesses went to show that defendant was rude and unkind to plaintiff; and that he applied to her abusive language and treated her with contempt. Plaintiff proved a good reputation; that she was a refined woman and that defendant's reputation for truth and veracity was bad.

The defendant's testimony went to show that his reputation for truth was good; and that his reputation for morality was also good. A witness heard plaintiff say to defendant on one occasion, "damn you," and also called him a "son-of-a-bitch." At the time defendant was tantalizing plaintiff about a small matter. Another witness said he heard plaintiff say to the daughter that she was "just like that big tall son-of-a-bitch of a father of yours, you ain't got any sense and never did have." Other witnesses testified to similar epithets that plaintiff applied to defendant's elder daughter. Defendant's evidence also tended to show that plaintiff did not use proper economy in the management of her own and the household expenses.

Plaintiff denied the truth of the testimony of witnesses to the effect that she called defendant ugly names

or applied such epithets in speaking of him to his daughter or others. Her testimony went to show that she had very little to do with the expense account of the family and that defendant generally directed what should be bought.

A controversy arose as to the ability of the defendant to pay the amount of the alimony allowed plaintiff. The evidence as to that matter was somewhat conflicting and we do not feel disposed to question the judgment of the trial court, which was in a much better position to weigh the testimony than we can possibly be under the circumstances. If the decree of divorce was justified under the proof, as a matter of law, plaintiff was entitled to alimony and a reasonable allowance for the maintenance of her child. The question in that event was merely one of fact, and we shall abide by the finding of the chancellor as there is much evidence going to support such finding.

The paramount question is whether plaintiff under the evidence is entitled to a decree of divorce, and that is a question of law, provided it is found that she proved the case as alleged in her petition. Much stress is laid upon the fact of the declaration of the plaintiff that she did not love defendant and that she married him for the sole purpose of thereby procuring for herself a home; and the further declaration that she had no affection for him during their married life. It might be said that a somewhat selfish motive entered into the calculations of the defendant as he was a widower with three children, and he wanted a wife to make a home for them and himself. There is no pretense that the parties fell in love with each other at first sight, as is said to occur in some instances. While the Christian world recognized marriage as a divine institution, and so does the law in a sense, yet at the same time it treats the relation of the individual to the institution as a matter of contract. It ignores the sentimental idea that "marriages are made in Heaven" and takes cognizance of the reality that the inducements

to wedlock are mostly of a terrestrial nature. All must concede that while human experience does afford many instances in which affection is the controlling motive that binds together the sexes for life "for better or for worse" yet, at the same time in a great minority, if not a majority of cases, other considerations govern, some marry to obtain position in society, some to further their ambitious pursuits, others for money, some for the sake of convenience and some for various other reasons, yet, notwithstanding the motive, the law recognizes their validity whatever may have been the superinducing cause. While the law recognizes the relation as purely contractual, still for reasons of private and public good, a marriage contract cannot be dissolved by the mutual consent of the parties. The relation cannot be dissolved except by a decree of court for certain causes enumerated by the statute regulating marriage and divorce.

It follows from what has been said that because plaintiff married defendant for convenience solely unmingled with any affection for him whatever, that this can make no difference as to her rights under the law of the land. Our statute which we believe embodies the most progressive and best thought of the age and designed for the best interest of the individuals concerned as well as for the good of society at large has provided different grounds, upon the establishment of which by competent evidence, the sufferer may be freed from his or her marital relations, among which is the following, viz.: The offering of such indignities by one party to the other "as shall render his or her condition intolerable."

The plaintiff's suit is founded upon this provision of the statute. The statute has provided, however, that to entitle a party to a divorce on this ground, or any other, such party must show that he or she is not only the injured, but also the innocent party.

It is needless to say that a wife whose husband beats her and calls her the most foul names in the presence of his own children and strangers and treats her with con-

tempt before the world, that her condition is thereby rendered intolerable. Such is the plaintiff's case as shown by the record. It is true defendant disputes the truth of the charges and introduces counter evidence wherein in the number of witnesses they overbalance those for plaintiff. If we could gather from the evidence that the court without reference to the weight of the evidence made its finding for the plaintiff we should not hesitate to set the decree aside, as the finding of the trial court is not binding upon us. But mere numbers do not always carry the preponderence of testimony. One witness to a given fact by his testimony may carry more weight than a number of others to the contrary. In such cases generally the judge who tries the case is the best judge of the weight of the evidence, as he sees the witnesses, hears them testify, marks their bearing, ascertains their bias or want of bias, and their disposition to speak the truth. And it may be said as somewhat explanatory of the finding of the court, that defendant's evidence comes from witnesses in a great part who are now or have been in his employ. The animosity between the parties was so bitter that no doubt the chancellor was seriously impressed with the conviction that the good of the parties demanded that they should be separated. While such a condition alone would not authorize a decree of divorce, yet taken in connection with the evidence of bad treatment the wife received at the hands of the husband, it was calculated to enlighten the court in reference to its duty in the premises.

As to the other question whether plaintiff was not only the sufferer but also the innocent party, it is sufficient to say that we believe we should hold as the court did. If the female friends and acquaintances of plaintiff, who testified that she was a woman of refined feelings, are right, it would be inconsistent and incredible that she used the improper language attributed to her.

Believing that substantial justice will be accomplished if the decree is allowed to stand, and that in the

end it will be for the good of both and the children, we think it is our duty to affirm it, and it is so ordered. All concur.