HENRY HARTWIG, Appellant, v. MILDRED F. HARTWIG, Respondent.

**Kansas City Court of Appeals, January 9, 1912.**

**DIVORCE: Infamous Crime.** Petit larceny is an infamous crime, and conviction thereof will entitle the other party to a marriage contract, to a divorce where the latter was ignorant of that fact at the time of the marriage.

Appeal from Boone Circuit Court.—*Hon. F. H. Harris*, Judge.

REVERSED AND REMANDED (*with directions*).

*N. T. Gentry* for appellant.

*W. M. Dinwiddie* for respondent.

JOHNSON, J.—Action for divorce commenced in the circuit court of Boone county in February, 1911, by Henry Hartwig, against his wife, Mildred F. Hartwig. Defendant answered but filed no cross petition. Judgment was rendered for defendant and plaintiff appealed.

The parties were married in June, 1908, at Clayton, in St. Louis county, and immediately went to plaintiff's home in Columbia where they lived together as husband and wife until January 29, 1911. At the time of the marriage plaintiff was a widower and the father of three children of tender years. He was a brick mason and had lived in Columbia twenty years or more. He was a man of good character and reputation and was a kind husband and father. Sometime after death of his first wife he advertised for a wife in a St. Louis newspaper and defendant answered the advertisement. A short correspondence ensued and plaintiff went to St. Louis, where defendant resided, to be married. At her suggestion they went to Clayton for a license and were married there. The parties lived together happily for a time. Defendant was a good housewife and, at first, was kind and attentive to plaintiff and his children. This wore off in time and, according to the evidence of plaintiff, she became harsh and abusive towards him and tyrannical and cruel towards his children. This evidence is contradicted by that of defendant and we shall not go into the issue of fact thus raised, nor shall we consider the further issue presented by the pleadings and evidence concerning the chastity of defendant prior to the marriage. We pass by these issues for the reason that other facts about which there is no substantial controversy compel a reversal of the judgment and the granting of the prayer of the petition.

In 1907 defendant was indicted for grand larceny in St. Louis and was tried and convicted of petit larceny and sentenced to imprisonment in jail for three months. She appealed to the St. Louis Court of Appeal and her appeal was pending at the time of her marriage to plaintiff. In November, 1908, the judgment was affirmed. [State v. Walken, 133 Mo. App. 247.] Defendant had been employed as housekeeper in a hotel in St. Louis and had stolen from her employer

rugs, portieres, scarfs, towels, napkins and similar articles. The Court of Appeals, speaking through GOODE, J., declared that the evidence left no doubt of defendant's guilt and referred to the verdict of guilty of petit larceny as merciful in view of the evidence which showed that the stolen property was worth several hundred dollars. The bond given by defendant to appeal the case proved worthless. There can be no reasonable doubt that the purpose of defendant in proposing that the marriage should be at Clayton was to conceal her identity and to escape serving the sentence of imprisonment and prevent her husband from learning of her crime and conviction.

Defendant testified that she told plaintiff about her past life before the marriage but the testimony is so overwhelmingly contradicted by all the facts and circumstances of the case that we have no hesitancy in declaring as a matter of fact that her crime and conviction were not known to plaintiff until in December, 1910, when he was informed of them by guests from St. Louis who visited defendant and, during the visit, told him of his wife's conviction. Plaintiff immediately went to St. Louis and verified by personal investigation the information he had received from his wife's guests. Then he returned to Columbia and consulted his lawyers who notified the sheriff of St. Louis where defendant was living. The sheriff responded by going to Columbia, arresting defendant and taking her to St. Louis where she was imprisoned in jail to serve her sentence. It was found that defendant had brought to plaintiff's house a large quantity of articles bearing the laundry number and stamp of the St. Louis hotel and also a quantity of expensive dresses and other feminine apparel, obviously not made for defendant and which, no doubt, she had stolen. Plaintiff had no knowledge that she was making his home a hiding place for stolen property until her arrest.

Among the charges of the petition is the allegation that defendant, prior to her marriage, "had been convicted of the crime of larceny, an infamous crime," and had kept the stolen goods in plaintiff's house without his knowledge.

The statute provides (section 2370, Revised Statutes 1909) that the injured party may have a divorce "where prior to the contract of marriage, or the solemnization thereof, either party shall have been convicted of a felony or infamous crime in any state, territory or country, without knowledge on the part of the other party of such fact at the time of such marriage." The term "felony" is defined by the statute (section 4923) to mean any offense "for which the offender, on conviction, shall be liable by law to be punished with death or imprisonment in the penitentiary, and no other."

The crime of petit larceny does not fall under this definition and we pass to the question of whether or not that offense should be held to be included within the meaning of the term "infamous crime." Our statute furnishes a clear and unmistakable definition of the term and, therefore, we shall not burden this opinion with references to the civil and common law definitions, nor with definitions to be found in text books and in cases from other jurisdictions. Section 4924, Revised Statute 1909, provides: "Whenever the term 'infamous crime' is used in this or any other statute, it shall be construed as including every offense for which the offender, on conviction or sentence, is declared to be disqualified or rendered incompetent to be a witness or juror, or to vote at any election, or to hold any office of honor, profit or trust within this state."

This statute has been in the books since 1865, and the test it prescribes included at the time of its enactment, and still includes, offenses other than felonies. Petit larceny is only a misdemeanor (sections 4925, Revised Statutes 1909), but because it belongs to the

class of crimes know as *crimen falsi* it has been treated both by the the legislature and courts of this state as of equal potency with grand larceny in the disqualification of a person to give testimony as a witness, to serve as a juror, to vote at elections, or to hold public office.

At first, a conviction either of grand larceny or petit larceny rendered a witness incompetent in this state, but in 1879, the law was changed and since then a conviction of either offense does not disqualify a witness but may be used as impeaching evidence. [State v. Dyer, 139 Mo. 199.] This change in the law, however, was not suggestive of any legislative intent to remove the offense of petit larceny from the class of infamous crimes. In section 4631, Revised Statute 1909, it is provided: "Any person who shall be convicted of arson, burglary, robbery or larceny, in any degree, in this article specified . . . shall be incompetent to serve as a juror in any cause, and shall be forever disqualified from voting at any election or holding any office of honor, trust or profit, within this state." Both grand and petit larceny are specified in the article referred to (sections 4548 and 4535) and it is very clear that these statutes are in *pari materia* with section 2370 and that petit larceny, being an infamous crime, the conviction of defendant for that crime before the solemnization of the marriage, afforded plaintiff a ground for divorce.

We have stated that plaintiff had no knowledge of the conviction but counsel for defendant appear to think that he was culpable in not investigating his wife's record before he married her. There is nothing in this position. The statute makes only actual, not constructive, knowledge, the test of whether or not a person deluded into an unworthy marriage has waived his right to complain. And in this the law shows a proper perception of and regard for universal custom. Men seeking wives do not search court records to as-

certain if the objects of their desires have escaped criminal prosecutions and convictions. Much must be taken for granted by each party to a marriage contract. And, further it appears that plaintiff suffered in the trial court from the fact that he advertised for a wife. The law does not condemn this method of seeking a wife. Some publicists and moralists advocate the adoption of more or less unnatural regulations by which all marriages shall be consummated according to some uniform but narrow rule, but the law of this State, in obedience to natural laws and impulses, allows men to procure wives in their own way. [Ryan v. Ryan, 156 Mo. App. 655.]

The judgment is reversed and the cause remanded with directions to enter a decree of divorce for plaintiff. All concur.