Linda B. NELSON, Appellant,

v.

Marion MARSHALL, et al., Respondents.

No. WD 47669.

Missouri Court of Appeals,
Western District.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

William J. Daily, Glasgow, for appellant.

Gary G. Sprick, and W.F. Daniels, Fayette, for respondents.

LOWENSTEIN, Judge.

This appeal from a bench trial involves the question of whether a valid, legal marriage can occur pursuant to § 451.040, RSMO 1986, where a ceremonial marriage occurred without application for or issuance of a marriage license, and the "groom" died the following day, negating any opportunity for successful application or issuance of a marriage license. Appellant, Linda Nelson (Linda), asks to be declared the widow of Samuel Marshall (Sam). She asserts the trial court erred as a matter of law in holding there was no valid marriage due to their failure to obtain a marriage license.

Linda and the decedent Sam had a twelve and a half year relationship. Linda and Sam lived together from December, 1991 until Sam's hospitalization in February, 1992. During the course of their relationship, they discussed the issue of marriage.

On February 12, 1992 while Sam was in a Columbia, Missouri, hospital, Sam and Linda attempted to get married. At Sam's request, Linda discussed with the hospital chaplain, Reverend Jensen, the procedure of how they could get married under their current circumstances. Reverend Jensen called the Boone County Recorder that day to find out the procedure for obtaining a marriage license for someone in the hospital. He was told the parties would have to get a waiver for the three day waiting period from a judge before a marriage certificate could be issued. §§ 451.040.2–451.040.3. Jensen relayed this information to Linda. He noted it would be difficult to get both the waiver and license because it was a legal holiday, Lincoln's birthday.

A "marriage" ceremony conducted by Jensen was held February 12, in Sam's room despite the absence of a marriage license. Linda believed the paperwork could be completed after the ceremony. Following the ceremony, Sam and Linda both believed they were married.

The following day, February 13, Jensen told Linda that both she and Sam needed to sign some papers to obtain the license. § 451.040.2 states that before receiving a license, "the parties to the marriage must present an application for the license, duly signed. . . ." The papers were never signed because of Sam's worsening condition. That evening Sam died. No marriage license was ever obtained.

Linda filed for letters of administration in the Probate Court of Howard County seeking to be appointed Personal Representative of Sam's estate. Respondents, Marion Marshall and Elma Lou Davis (Sam's brother and sister) also filed a joint application for letters of administration declaring they were the only heirs-at-law and that Sam had no surviving spouse. Following Respondents' filing for letters of administration, Linda withdrew her application for letters of administration. This suit was instituted by Linda after the existence of the marriage was questioned by respondents in the probate proceedings.

■ Review of the trial court's decision is governed by Rule 73.01 and the principles established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision must be affirmed unless: 1) there is not substantial evidence to support it; 2) it is against the weight of the evidence; 3) it erroneously declares the law; or, 4) it erroneously applies the law. *Id. at 32*. On these facts this question is raised: may a ceremonial marriage conducted by one with statutory au-

thority to solemnize a marriage without the parties having ever applied for, or obtained, a marriage license be ruled married? The trial court ruled no valid marriage exists. This court affirms.

■ The general rule is that marriage is a contract as well as a status or a legal condition and the state has a legitimate and rightful concern with the persons domiciled in its borders in relation to this status. *State ex rel Miller v. Jones,* 349 S.W.2d 534, 537 (Mo.App.1961); *General American Life Ins. Co. V. Cole,* 195 F.Supp. 867 (E.D.Mo.1961) (citing *Ryan v. Ryan,* 156 Mo.App. 655, 137 S.W. 1014 (1961)). To further the state's interest in the marital relationship, it may implement "reasonable regulations that do not interfere in a significant manner with decisions to enter into marital relationships." *People v. Schuppert,* 217 Ill.App.3d 715, 577 N.E.2d 828, 830 (5th Dist.1991) *app. denied* 143 Ill.2d 646, 167 Ill.Dec. 407, 587 N.E.2d 1022 (1992) (citing *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)). Requiring a marriage license is an appropriate regulation. A rational relationship exists between "the requirement that marriages be licensed and the strong continuing interest of the State in the institution of marriage ..." *Id.* As part of Missouri's laws regulating marriage, and the statute at the heart of this appeal, § 451.040.1 requires a marriage license for a marriage to be considered valid. The statute contains the following language:

> "Previous to any marriage in this state, *a license* for that purpose *shall* be obtained from the officer authorized to issue the same, and *no marriage hereafter contracted shall be recognized as valid unless the license has been previously obtained,* and unless the marriage is solemnized by a person authorized by law to solemnize marriages." § 451.040 RSMo. (1986). (emphasis added).

■ The question before this court is whether, under these facts, there was a valid marriage between Sam and Linda. The terms void and valid are essentially terms which are opposites of another; i.e., if it is void, it is not valid and vice versa. A void marriage is a nullity, while a voidable mar-

riage is valid until a judgment is rendered that it is voided. *See Flaxman v. Flaxman,* 57 N.J. 458, 273 A.2d 567 (1971). Void is defined in Blacks Law Dictionary 2nd Edition, as " * * * ineffectual ... having no legal force or binding effect; unable in law, to support the purpose for which it was intended." *Emerson Electric Mfg. Co. v. Ferguson,* 376 S.W.2d 643, 649 (Mo.App. 1964).

■ In determining whether this is a valid marriage, this court looks to see whether Sam and Linda complied with the statutorily proscribed requirements for a valid marriage. *See Thomson v. Thomson,* 236 Mo. App. 1223, 163 S.W.2d 792, 796 (1942). The general rule when interpreting a statute is "to ascertain the legislative intent from the statute's language, to give effect to that intent if possible, consider the words in their plain and ordinary meaning, and when the language is unambiguous, we are afforded no room for construction." *Brownstein v. Rhomberg–Haglin & Assoc., Inc.,* 824 S.W.2d 13, 15 (Mo. banc 1992) (citing *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988)). In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence. *Wolff Shoe Co.,* 762 S.W.2d at 31. Here, the language "Previous to any marriage in this state, *a license* for that purpose *shall* be obtained from the officer authorized to issue the same, and *no marriage hereafter contracted shall be recognized as valid unless the license has been previously obtained. . . .*" is unambiguous on its face. Any ambiguity which this court would declare would be a strained reading of the plain language. Furthermore, the Supreme Court of Missouri has noted legislative intent of this language was to prohibit common-law marriages which, until the implementation of this language, were sanctioned. *State v. Eden,* 350 Mo. 932, 169 S.W.2d 342, 345 (1943). To eliminate common-law marriages, the legislature implemented solemnization and license requirements. The plain language of the statute requires the parties to obtain a marriage license for a valid marriage contract.

This portion of the Missouri marriage laws has been the subject of minimal judicial scrutiny. One of the few cases interpreting this language is *State v. Eden,* 169 S.W.2d 342 (1943). *Eden,* was a criminal case for bigamy where the defendant attempted to "void" his first marriage to defeat an essential element of the offense. In *Eden,* the Court looked at this language in § 3364 R.S. 1939, a predecessor of § 451.040 using the same language, and noted " 'no marriage hereafter contracted shall be recognized as valid' etc. was not intended to render void ab initio a ceremonial marriage solemnized under the forms of, and in apparent compliance with, the marriage statutes ..." *Id.* Furthermore, it said, "... it is our conclusion ... when taken in connection with the further provision that 'no marriage shall be deemed or adjudged invalid [for the reason therein specified] can, in no event mean anything more than it *shall* not be recognized as valid on judgment and certainly not that it is ipso facto an utterly void." *Id.* Here, there was not "apparent compliance with the marriage statutes" since the parties only indication of compliance with the license requirement was having Reverend Jensen call the Recorder's office to find out the necessary procedures. In *Eden,* the Court noted since the marriage was bigamous it would make no difference "whether it would also have been invalid for want of a proper license...." *Id.*

■ While this court recognizes that the doctrine of ab initio nullity of marriages is looked on with disfavor, *In re Guthery's Estate,* 205 Mo.App. 664, 226 S.W. 626 (1920), Missouri is among the states whose "licensing statute plainly makes an unlicensed marriage invalid." *Carabetta v. Carabetta,* 182 Conn. 344, 438 A.2d 109 (1980). *Accord, Lopez v. Lopez,* 102 N.J.Super. 253, 245 A.2d 771, 772 (1968); *State v. Lard,* 86 N.M. 71, 519 P.2d 307, 310 (App.1974) (marriage as civil contract requires a license); the court declines to follow those states which have declared their licensing provision as merely directory, and holds the absence of a marriage license as a fatal flaw. *See Carabetta,* 428 A.2d 109; *DeMedio v. DeMedio,* 215 P.Super. 255, 257 A.2d 290, 301–302 (1969); *Picarella v. Picarella,* 20 Md.App. 499, 316 A.2d 826, 834 (App.1974); *De Potty v. De Potty,* 226 Ark. 881, 295 S.W.2d 330 (1956); *Wright v. Vales,* 1 Ark.App. 175, 613 S.W.2d 850, 852 (1981) (Arkansas has no statute providing a marriage is void when no license is obtained); *Maxwell v. Maxwell,* 51 Misc.2d 687, 273 N.Y.S.2d 728 (N.Y.Sup.1966); *Johnson v. Johnson,* 235 S.C. 542, 112 S.E.2d 647 (S.C.1960) (marriage solemnized pursuant to a defective or without any license does not affect its validity.)

■ This court recognizes that while this decision requires a marriage license for a marriage to be valid, this does not preclude the long established doctrine of proving the existence of a valid marriage with circumstantial evidence. *See Thomson,* 163 S.W.2d at 796; *Rone's Estate v. Rone,* 218 S.W.2d 138, 146–47 (Mo.App.1949); *Smith v. Smith,* 361 Mo. 894, 237 S.W.2d 84 (Mo.1951) (parole evidence of ceremony and marriage certificate sufficient). In *Suddeth v. Hawkins,* 202 S.W.2d 572, 576 (Mo.App.1947), the court looked at § 3364 R.S. 1939, the same statute analyzed in *Eden,* and held "Our statutes on marriage provide the procedure to be followed in order that a legal marriage may be entered into; ..." not the methods which may be used to prove it. Here there is no dispute that no marriage license was ever issued to Linda and Sam; therefore, we need not go into the requisite circumstantial evidence to prove a valid marriage.

■ In a well argued attempt to prevail in this case, Linda directs the court to language in *Hartman v. Valier & Spies Milling Co.,* 356 Mo. 424, 202 S.W.2d 1 (1947). *Hartman* was a worker's compensation case which found, under Illinois marriage laws, a woman had been married to the deceased employee. *Hartman* involved a lost marriage certificate where the couple "lived together publicly ... after the alleged ceremony," *Id.* 202 S.W.2d at 5, and four months later, the husband "took out life insurance in her favor as his wife." *Id.* at 7. In the case at bar, there is no argument about presumptions or use of circumstantial evidence to satisfy "irregularities" of marriage statutes. Here, there never was, nor ever will be, a license application or a certificate issued; hence no valid marriage.

This ruling does not address the other matters raised in this case: 1) did Sam's condition at the time of ceremony render him unable to understand what he was doing; and 2) had Sam survived and a license later obtained, properly signed, and recorded, would a valid marriage be declared. This opinion further does not delve into other statutory criteria such as the witnesses signing or the recording of the duly solemnized certificate. This case stands for the proposition that a marriage will not be declared valid in this state without the parties having first obtained, or ever having obtained, a license or recorded a certificate. A contrary result here would lead to the legal problems the court's faced with proving common-law marriages, which the legislature sought to avoid by enacting the requirements set forth in Chapter 451 RSMO.

Since no marriage certificate was ever issued, this court finds the trial court did not erroneously declare the law and affirms its ruling that Linda and Sam were not married.

The judgment is affirmed.

All concur.