Beverlee **CHERVITZ**,
Plaintiff/Appellant,

v.

**BI–STATE DEVELOPMENT AGENCY, et al., Defendants/Respondents.**

No. ED 76077.

Missouri Court of Appeals,
Eastern District,
Division Six.

Dec. 3, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 2000.

Application for Transfer Denied March 21, 2000.

*See also* 988 S.W.2d 599.

Mark E. Goodman, Jeffrey A. Cohen, Rosenblum, Goldenhersh, Silverstein & Zaft, Clayton, for appellant.

Gerald K. Rabushka, Richard G. Byrd, Clayton, for Ralph McKeever.

Brown & James, James E. Whaley, St. Louis, for Bi–State.

MARY K. HOFF, Judge.

Beverlee Chervitz (Sister), sister of Simone German, (Decedent) appeals from the judgment dismissing her wrongful death action in favor of a wrongful death action filed by Decedent's alleged husband, Ralph McKeever (McKeever). We affirm.

On June 11, 1997, a Bi–State bus struck and killed Decedent. On June 18, 1997 McKeever, filed a petition for damages for wrongful death against Bi–State. On June 28, 1997 Sister filed suit against Bi–State seeking damages for the wrongful death of Decedent. The circuit court consolidated these wrongful death cases.

Bi–State filed a Motion for Summary Judgment arguing McKeever was not lawfully married to Decedent at the time of her death because such marriage had not been solemnized pursuant to Section 451.040 RSMo 1994.[1] The circuit court held a hearing for the presentation of evidence addressing whether McKeever was the husband of Decedent at the time of her death.

The evidence at that proceeding shows: McKeever and Decedent, both mildly retarded adults, were dating and decided to get married. The couple went to the Office of the St. Louis Recorder of Deeds and completed an application for a marriage license, which was issued on January 3, 1987.

---

1. All subsequent statutory cites are to RSMo 1994 except where noted.

McKeever contacted Reverend James W. Rhiver (Rhiver) of the Holy Cross Lutheran Church and told Rhiver he and Decedent would like to get married. McKeever and Decedent went to the church on January 27, 1987, with their marriage license and wedding rings. McKeever testified that a ceremony occurred at the church that day during which he and Decedent exchanged vows and wedding rings.

After performing the ceremony Rhiver did not sign the marriage license. He testified that while the ceremony at the church was sufficient for a marriage ceremony, he wanted to call McKeever's social worker to make sure there was no legal prohibition against McKeever and Decedent getting married. The social worker never got back to Rhiver, and Rhiver did not sign the marriage license. Rhiver returned the unsigned license to the Recorder of Deeds Office, which recorded the license. Rhiver did not deliver a marriage certificate or a copy of the marriage license to the couple; nor did the couple know the license was unsigned.

After the ceremony in January 1987, McKeever and Decedent held themselves out to be husband and wife, lived together as husband and wife, wore their wedding rings, and celebrated their anniversary. However, McKeever did not report his marriage to Social Security or to his social worker because he was afraid his social security payments would decrease as a result of the marriage.

In its Findings of Fact, Conclusions of Law and Order, the circuit court found the couple was married under Missouri law at the time of Decedent's death. McKeever then filed a Motion to Dismiss Sister's cause of action pursuant to Section 537.080. That statute provides that a wrongful death action filed by a spouse precludes a brother or sister from filing a wrongful death action. On May 22, 1998 the circuit court entered a Judgment and Order dismissing Sister's cause of action. We dismissed for lack of jurisdiction an appeal from that decision. *McKeever v. Bi–State Development Agency,* 988 S.W.2d 599 (Mo.App. E.D.1999). The trial court then entered an Amended Judgment and Order (Judgment) dismissing Sister's cause of action with prejudice. This appeal followed.

■ The only issue on appeal is whether at the time of her death, Decedent's marriage to McKeever was lawfully solemnized as required by Section 451.040.

The judgment of the trial court is presumed to be correct and will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The credibility of the witnesses and weight given to testimony are matters for the trial court. *Hamill v. Hamill,* 972 S.W.2d 632, 635 (Mo.App. E.D.1998).

Sister claims the purported marriage between McKeever and Decedent was void because it failed to meet the statutory requirements for a valid marriage. Section 451.040.1 states:

Previous to any marriage in this state, a license for that purpose shall be obtained from the officer authorized to issue the same, and no marriage hereafter contracted shall be recognized as valid unless the license has been previously obtained, and unless the marriage is solemnized by a person authorized by law to solemnize marriages.

Sister argues, if the purported marriage was not solemnized, then the purported marriage is void. Sister relies on *Nelson v. Marshall,* 869 S.W.2d 132 (Mo.App. W.D.1993) to support her argument. In *Nelson,* a marriage ceremony occurred without an application for or issuance of a marriage license. *Id.* at 133. The Western District held the marriage invalid after considering the requirements of Section 451.040.1 RSMo 1986, which had terms

identical to those of the statute at issue here. *Id.* at 134.

The court said:

This opinion further does not delve into other statutory criteria such as the witnesses signing or the recording of the duly solemnized certificate. This case stands for the proposition that a marriage will not be declared valid in this state without the parties having first obtained, or ever having obtained, a license or recorded a certificate.

*Id.* at 136. Sister's reliance on *Nelson* is misplaced because it is undisputed that McKeever and Decedent had a marriage license.

■■■ There is a strong public policy in favor of marriage, and the presumption in favor of marriage is very strong. *Yun v. Yun*, 908 S.W.2d 787, 790 (Mo.App. W.D. 1995). The burden of proving the invalidity of a marriage rests upon the party asserting the invalidity, and a marriage will not be declared invalid except upon clear, cogent and convincing evidence. *Enlow v. Fire Protection Systems, Inc.*, 803 S.W.2d 148, 150 (Mo.App. E.D.1991).

Section 451.040 does not state any requirements for solemnization. The statute only requires the marriage to be "solemnized by a person authorized by law to solemnize marriages." Section 451.040.1. It is undisputed that Rhiver was authorized to solemnize marriages. Moreover, the record shows Rhiver considered the marriage to be solemnized.

Rhiver said, if McKeever's social worker had approved of the marriage, McKeever and Decedent did not have to come back for an additional ceremony before he signed the marriage license. Rhiver testified, if he had spoken with the social worker on the phone after the ceremony, he would have signed the marriage license. The couple left thinking Rhiver was going to sign the marriage license and mail it to the Recorder of Deeds. Instead, after Rhiver did not hear from the social worker, he sent the unsigned marriage license to the Recorder of Deeds. McKeever was not aware that Rhiver had not signed the license until the lawsuit was filed.

In this case, McKeever and Decedent took the necessary steps to comply with the statute's requirements for marriage. The couple got a marriage license, went to their Reverend, who is authorized by law to solemnize marriages, and exchanged wedding vows and rings. The evidence shows Rhiver performed a ceremony that he would perform for any other couple. The only difference is that the marriage license was left unsigned.

■■■ The fact that Rhiver did not sign the marriage license does not mean the couple's marriage was not solemnized. In *State v. Eden*, 350 Mo. 932, 169 S.W.2d 342, 345 (1943), our Supreme Court said a defective marriage license renders the marriage merely voidable and the marriage is to be treated as valid until declared void by competent authority. A voidable marriage is open to attack only in the lifetime of both spouses, therefore the marriage may not be attacked at this time since Decedent is not now alive. *See Glass v. Glass*, 546 S.W.2d 738, 744 (Mo.App. W.D.1977).

To reach its decision, the trial court relied on *Dyer v. Brannock*, 66 Mo. 391 (1877). In *Dyer*, our Supreme Court said "to solemnize means nothing more than to be present at a marriage contract, in order that it may have due publication, before a third person or persons, for the sake of notoriety and the certainty of its being made." *Id.* at 410. This case complies with the definition of solemnization in *Dyer*. The couple was present at a ceremony before Rhiver.

Because the couple complied with Section 451.040.1 and had a marriage ceremony performed by a person authorized by law to solemnize marriages, we find the marriage of McKeever and Decedent is valid, therefore pursuant to Section 537.080 McKeever's wrongful death action precluded Sister's suit. Accordingly, the

trial court properly dismissed Sister's wrongful death cause of action.

Judgment affirmed.

MARY RHODES RUSSELL, Chief Judge, and KATHIANNE KNAUP CRANE, Judge, concur.