

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00048-CR
### NO. 02-12-00049-CR

ANDREA ROBLES                                    APPELLANT

V.

THE STATE OF TEXAS                                     STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Andrea Robles appeals her convictions for possession with intent to deliver more than 400 grams of methamphetamine and possession with intent to deliver more than four but less than 200 grams of cocaine. In three points, Robles argues that the trial court erred by denying her motion to

---

[1]See Tex. R. App. P. 47.4.

suppress, that the evidence is insufficient to support the jury's finding that she possessed methamphetamine and cocaine, and that the evidence is insufficient to support her convictions. We will affirm.

## II. BACKGROUND

Fort Worth Police Department Narcotics Unit Officer Alfredo Dominguez sought a search warrant on June 4, 2010, for a residence located at 2307 Dell Street, Fort Worth, Texas. In his affidavit, Dominguez averred that in April 2010, he received a tip from a confidential informant that narcotics trafficking and sales were taking place at that address. Dominguez stated that during the months of May and June 2010, he conducted surveillance on 2307 Dell Street and "observed short term vehicle and pedestrian traffic which is consistent with the sales and distribution of illegal narcotics." He also stated that he had observed what appeared to be a "lookout" outside of 2307 Dell Street and that "[l]ookouts are typically used to warn others of the presence of the [p]olice."

According to Dominguez's affidavit, he also observed a man walking around the front of 2307 Dell Street, whom he later identified as Jose Orozco by using a jail booking photograph. Dominguez further averred that on May 11, 2010, and June 2, 2010, he conducted two separate controlled buys at 2307 Dell Street using "a reliable and confidential informant." Dominguez said that he field tested the drugs purchased and determined that they were cocaine and methamphetamine. Dominguez further stated that the confidential informant he utilized during his investigation "has assisted in multiple investigations in the

2

past" and "has provided information in the past that has been proved correct and reliable." Based on this affidavit, a judge issued a search warrant on June 4, 2010, for 2307 Dell Street. Fort Worth SWAT and the Narcotics Unit executed the warrant on 2307 Dell Street on June 7, 2010. There they discovered Orozco, Robles, and a third unidentified individual,[2] as well as copious amounts of cocaine, methamphetamine, marijuana, and drug paraphernalia.

At trial, the State and Robles stipulated that State's marked exhibits 15 through 20, 31 through 33, and 40 through 46 contained substances that had been tested using "scientifically and legally accepted practices." Specifically, the parties stipulated that State's exhibits 45 and 46 contained a total of 10.51 grams of cocaine, including adulterants and dilutants; that State's exhibit 41 contained a total of 124.39 grams of cocaine, including adulterants and dilutants; and that State's exhibits 15 through 20, 31 through 33, and 40 through 46 contained a total of 737.24 grams of methamphetamine, including adulterants and dilutants. During the trial, Robles also moved the trial court to suppress this evidence because she believed that the warrant was not based on probable cause. The trial court denied the motion.

Dominguez testified that SWAT officers detained Orozco and Robles in the lone bedroom of 2307 Dell Street when executing their search. Dominguez said

---

[2]The record indicates that Orozco was tried for similar charges in a separate trial and that the third individual was released from the residence shortly after police searched 2307 Dell Street.

3

that "it was evident that both a male and a female lived" at 2307 Dell Street because of the shoes and clothing they discovered in the bedroom closet. Dominguez also described the residence and bedroom as clean. Dominguez discovered guns and "methamphetamine bags" in the bedroom closet. On the bed in the bedroom, Dominguez found Robles's purse. In it he found a pawn ticket for jewelry in her name. Dominquez found mail addressed to Robles in the residence, but it was addressed to a post office box. He also found two identification cards and a debit card with Robles's name on them, a picture of Orozco and Robles, and a piece of paper with "numbers and drug notes." Dominguez stated that the drug notes contained numbers, and the methamphetamine slang term "frio" and cocaine slang term "soda." And as the State laid the exhibits "out here before" him, Dominguez identified State's exhibits 15 through 20 as being the cocaine and methamphetamine that he had discovered in the master bedroom closet.

Dominguez averred that given his training and experience, the amount of drugs found during the search of 2307 Dell Street was consistent with the distribution of illegal narcotics. He also testified that the search unit discovered other paraphernalia consistent with drug distribution, including empty plastic baggies, a large amount of cash ($4,383 found on Orozco's person), and digital scales. Dominguez also testified that the presence of guns found at the residence was consistent with illegal narcotics distribution.

4

During cross-examination, Robles elicited testimony from Dominguez that during his investigation, he personally had participated in the June 2 controlled buy. According to Dominguez, he entered the 2307 Dell Street residence and purchased narcotics from Orozco while Robles was present. On redirect, the State questioned Dominquez about the specifics of the June 2 controlled buy and particularly about Robles's presence. By Dominguez's account, when he went to the 2307 Dell Street residence, Robles answered the door. He stated that when he asked for Orozco, Robles "went upstairs and got him." He also testified that he had knowledge of other officers having encountered Robles.

Fort Worth Police Officer Bryan Clark also testified that during the search, he found a "dark garbage sack by the television" that contained marijuana and a clear baggie containing methamphetamine. He also discovered small baggies of marijuana inside the toilet tank in the bathroom, as well as empty clear baggies "scattered on the floor, some in the tank, . . . everywhere in [the bathroom]." Clark testified that given the amount of narcotics discovered coupled with the presence of digital scales and "separate baggies that are used for packaging," he believed that narcotics were being sold from 2307 Dell Street.

Fort Worth Police Sergeant Richard Dotson described the residence as "garage-style," where most of the living area was upstairs and open. Dotson said that he found "[n]umerous sets of scales, baggies, things like that . . . laying out in plain view." Dotson testified that he also searched "outside of the house directly below" a window because SWAT officers had informed him that Orozco

5

had thrown a bag out of the window when they entered. Dotson specifically testified that the bag, marked State's exhibit 41, contained "130 grams of cocaine." He also averred that State's exhibit 42 was cocaine that was found in plain view in the kitchen. By Dotson's account, there was mail in the residence addressed to multiple people, including Robles. When asked whether any of the mail was addressed to Robles at 2307 Dell Street, Dotson answered, "I thought it was to that address, but I can't be sure."

Fort Worth Police Officer Misty Hayes testified that she performed custodial duties over the items seized from 2307 Dell Street. Relevant to this appeal, she identified State's exhibits 31 through 33 and 41 through 46 as being items found during the search. On cross-examination, Robles referred to these items as "drug evidence."

Fort Worth Police Officer Michael Valdez testified that he took Robles's statement after SWAT had secured the residence. Valdez verified, and the State published to the jury, Robles's statement which reads:

> I was living here on & off @ 2307 Dell. My original address is 2703 Roosevelt Ave., Ft. Worth, TX. 76164. I knew what was going on @ stated address. [Orozco] is my boyfriend. I knew he had drugs, meth. I had seen guns prior, but had no idea they were here @ time. He had meth & coke.

Trial court administrative clerk Becky Finstad also testified that Robles's trial was originally set for May 2, 2011, but that Robles failed to appear. During closing argument, Robles referenced the State's exhibits: "[The State] sure did want to bring you all this *(indicating)*. Golly, that's a lot of dope, lot of dope,

6

there's guns, there is everything." The jury found Robles guilty of both counts of delivery of a controlled substance.

At the punishment phase, the State moved to re-introduce all of its exhibits. The record reveals an exchange between the trial court and the attorneys whereby it was discovered that State's exhibits 15 through 20, 31 through 33, and 41 through 46 had never been formally introduced during the guilt/innocence phase. Outside the presence of the jury, the following colloquy took place:

> THE COURT: So you just forgot to offer it?
>
> [State]: Yes, Judge.
>
> THE COURT: So all of these items that you laid on the railing in front of the jury were not in evidence?
>
> [State]: That is correct, Your Honor.
>
> [Defense Counsel]: Judge, if I may, at this point, having learned that all of the items that were, in fact, shown to the jury and published without priorly -- prior being admitted into evidence, we'd ask that this could have unfairly prejudiced the jury panel into making their decision on guilt/innocence. We would move for a mistrial at this point based upon the fact that the drugs that are the basis of the Counts 1 and 2 in each indictment haven't been admitted for -- from the Court, and they've been unfairly published to the jury.
>
> . . .
>
> [Defense Counsel]: We are asking for a mistrial at this point, Judge. We've gotten all the way to the point where they found her guilty based upon the evidence that's already been shown and laid out in front of them during closing, which is the basis --
>
> THE COURT: But you didn't object. I mean, we got all the way through to this point and you never objected to them using items in

7

evidence that weren't in evidence, so you can't ask for a mistrial if you've never had an objection in an adverse ruling. I am going to deny your request for a mistrial.

After the punishment phase, the jury assessed punishment of ninety-nine years' incarceration for each count. The trial court entered judgment accordingly. This appeal followed.

## III. Discussion

### A. Robles's Motion to Suppress

In her first point, Robles argues that the trial court erred by denying her "motion to suppress the warrant and the resulting fruits of the illegal search." Robles's argument is that Dominguez's affidavit in support of the search warrant contains "conclusory and generalized factual assertions . . . insufficient to establish . . . a proper finding of probable cause." Robles's argument contains a number of discrete attacks on the information contained in the affidavit.

First, Robles argues that even though the affidavit states the month that Dominguez first received information that illegal drugs were being sold from the residence, it does not state the specific day. Second, Robles argues that even though the affidavit states that Dominguez conducted surveillance of the residence for two months, it does not provide "specifics as to how many times he saw people go in and out [of] the house, how many days he watched the house, what dates he watched the house nor how many different people he saw go to the house." Third, Robles argues that even though the affidavit states that Dominguez conducted two controlled buys from the residence, the "affidavit

8

[does] not state if it was the same informant or two different informants on each occasion." Fourth, Robles argues that Dominguez failed to verify with the "informants" Dominguez's own observations of Orozco coming out of the residence. Finally, Robles argues that the affidavit contains "no information . . . as to the character of the unnamed informant, as to his employment, criminal history, drug usage or relationship to the parties" at the residence. Thus, Robles argues, a warrant should not have been issued and the trial court erred by denying her motion to suppress the evidence gathered during the search. We conclude that the affidavit provided sufficient probable cause to support the issuing magistrate's implicit finding of probable cause.

A search warrant may not legally issue unless it is based on probable cause. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 1.06 (West 2005). When reviewing a trial court's decision on a motion to suppress, we normally use a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court's determination of historical fact or questions of mixed fact and law when they involve credibility determinations. *Id.* But we review de novo the application of law to the facts, or mixed questions that do not turn on the determination of credibility. *Id.* As to search warrants, however, both appellate courts and trial courts alike must give great deference to a magistrate's implicit finding of probable cause. *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011). The issuing magistrate's determination of probable cause will be

9

sustained if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).

When reviewing a magistrate's determination, we should interpret the affidavit in a "commonsensical and realistic" manner, recognizing that the magistrate may draw reasonable inferences. *McLain*, 337 S.W.3d at 271 (*quoting Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)). When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* A "grudging or negative attitude" by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331. Whether the facts alleged in a probable-cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Id.* at 230–31, 103 S. Ct. at 2328. A search warrant is supported by probable cause when the facts set out within the "four corners" of the affidavit are "sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

Here, the affidavit recites facts that demonstrate drug-related activity of a protracted and continuous nature. Although Dominguez did not recite a play-by-play activity log of his observations, he concisely articulated his involvement in an ongoing surveillance of the residence–-surveillance he conducted because he

10

had received information that cocaine and methamphetamine were being sold there. This information, coupled with the details of two specific controlled buys that Dominguez stated he orchestrated and observed, including giving the dates and times when the controlled buys happened, support a finding of probable cause to search. *See Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 370 (2012) (holding that supporting affidavit in which officer stated that he had "recently" received information from one informant that drugs were present at residence, and after receiving information, used second informant to conduct a controlled buy coupled with officer's expressed belief that drugs were currently on premises provided probable cause justifying search warrant); *State v. Griggs*, 352 S.W.3d 297, 304–05 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant."); *see also United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972) ("Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."). This finding of probable cause was further buttressed by Dominguez's statement in the affidavit that during his investigation he utilized "a reliable and confidential informant" who had "provided information in the past that has been proved correct and reliable." *See Blake v. State*, 125

11

S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("When an unnamed informant is relied upon in an affidavit for a search warrant, his credibility may be established by allegations that the informant has proven reliable on previous occasions.")

We hold that the trial court did not err by denying Robles's motion to suppress based on the issuing magistrate's implicit finding that Dominguez's affidavit contained sufficient facts to justify a conclusion that a search of 2307 Dell Street would probably uncover cocaine and methamphetamine on the premises. *See McLain*, 337 S.W.3d at 271. We overrule Robles's first point.

## B.    Evidence of Possession

In her second point, Robles argues that the evidence does not support a finding that she possessed the methamphetamine and cocaine that officers found at 2307 Dell Street. We conclude that the evidence is sufficient to support the jury's determination that Robles possessed the methamphetamine and cocaine.

### 1.    Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

### 2.    Law of Possession

A person possesses an object if he has actual care, custody, control, or management of that object.  Tex. Health & Safety Code Ann. § 481.002(38) (West 2010).  When drugs are found and the accused is not in exclusive possession of the place where they are found, the connection to the drugs must be more than fortuitous, and to this end, Texas courts utilize a links rule that is designed to protect innocent bystanders from conviction merely because of their proximity to someone else's drugs.  *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.— Houston [14th Dist.] 2005, no pet.).  Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control, but presence or proximity, when combined with other evidence, direct or circumstantial, may be sufficient.  *Evans*, 202 S.W.3d at 161–62.  Such "links" generate a reasonable inference that the accused knew of the contraband's existence and exercised control over it.  *See id.*  Courts have identified the following factors that may help to show an accused's links to a controlled substance:    (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested;  (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to

13

flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Olivarez*, 171 S.W.3d at 291. It is not the number of links that is dispositive but, rather, the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

Here, while not all of the factors are present, a number of them are. Robles was one of two individuals found in the sole bedroom of 2307 Dell Street when the SWAT team entered to secure the premises as the warrant was being executed. Dominguez testified that Robles was present at 2307 Dell Street when he personally conducted a controlled buy on June 2, 2010, and that Robles answered the door and responded to Dominguez's request for Orozco. He testified that Robles immediately went upstairs and retrieved Orozco so that Dominguez could purchase narcotics. Robles, in a written statement taken during the search, stated that she lived at 2307 Dell Street "on & off." She also made this statement in reference to her "original address" of 2703 Roosevelt Avenue. There is also evidence in the record that officers discovered male and female clothing in the closet where Robles and Orozco were found when SWAT entered the residence. Robles stated that Orozco is her boyfriend, and police

14

found pictures of Robles, identification cards and a debit card in Robles's name, as well as mail addressed to Robles, in the residence. *See Nhem v. State*, 129 S.W.3d 696, 699–700 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (reasoning that telephone bills in appellant's name found under bed where cocaine rocks were also found tended to link appellant to cocaine). The logical force of all of this evidence implies that Robles was present at the time police searched 2307 Dell Street and that she had the right to possess the place where officers found the methamphetamine and cocaine.

Evidence at trial demonstrates that 2307 Dell Street is a "garage-style" residence with its primary living area upstairs and that it is an open living area with one bedroom. Furthermore, the majority of methamphetamine and cocaine found during the search was in plain view, or had been tossed out of the window of the bedroom in which both Orozco and Robles were found. The logical force of this evidence implies that Robles had proximity and accessibility to the narcotics found at 2307 Dell Street.

Officers discovered copious amounts of narcotics and contraband during their search. The State offered testimony by several officers regarding the quantity of narcotics discovered during their search as well as weapons and drug-trafficking paraphernalia, including digital scales and "methamphetamine bags" discovered in plain view.

Robles made incriminating statements that she knew "what was going on" at 2307 Dell Street and specifically stated that she knew Orozco "had meth and

15

coke." Furthermore, testimony at trial indicated that the trial court revoked Robles's bond while awaiting her trial for these charges and issued a warrant for her arrest because she failed to attend the original trial setting. Robles did not offer any testimony or evidence that this evidence of flight was directly related to some other transaction that is not connected to these present charges. *Hyde v. State*, 846 S.W.2d 503, 505 (Tex. App.—Corpus Christi 1993, pet ref'd) ("To exclude evidence of flight, the defendant has the burden to affirmatively show that the flight is directly connected to some other transaction that is not connected with the offense on trial."). This is some evidence of a consciousness of guilt. *See Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114 (1995) (reasoning that evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn).

Given the logical force of all of this evidence and viewing it in the light most favorable to the verdict, we conclude that a reasonable jury could have found that Robles possessed the methamphetamine and cocaine found at 2307 Dell Street. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. We overrule Robles's second point.

### C. Evidence of Cocaine and Methamphetamine

In her third point, Robles argues that the evidence is insufficient to support her convictions because the State never formally introduced the methamphetamine or cocaine that the officers seized during their search of the residence. We disagree.

16

When physical evidence is marked as an exhibit, physically shown to the jury, and treated by the court and both parties as having been introduced in evidence, the evidence is considered sufficiently introduced for consideration by the jury and appellate review. *Heberling v. State*, 834 S.W.2d 350, 355–56 (Tex. Crim. App. 1992).

In this case, the physical evidence of cocaine and methamphetamine that Robles complains was not formally introduced was marked as exhibits prior to trial. Using these exhibit numbers, the parties stipulated that the contents of the exhibits had been properly analyzed under scientifically and legally accepted practices and determined to be methamphetamine and cocaine. Both parties stipulated to the quantities of these drugs contained in the marked exhibits. The State, without objection by Robles, elicited testimony at trial regarding these exhibits, including testimony as to whether they contained either cocaine or methamphetamine, where they were found in the residence, and what quantities were found. Furthermore, and again without objection, the State physically displayed these exhibits on the railing in front of the jury during its case in chief. Moreover, Robles referenced this demonstration during her closing argument. And the State, Robles, and the trial court all expressed surprise that these exhibits had never formally been introduced during the guilt/innocence phase when the State formally introduced these exhibits during the punishment phase of trial. Therefore, "the mere fact that the State did not technically introduce the exhibit is not dispositive of our determination of whether there is sufficient

evidence to support the conviction." *See id.* (reasoning that an exhibit of cocaine was properly before the jury when it had been testified to, marked as an exhibit, physically shown to the jury, and treated by all parties as having been formally introduced); *see also Voelkel v. State*, 629 S.W.2d 243, 246–47 (Tex. App.—Fort Worth 1982) (holding that cigarette case containing amphetamines that was never formally admitted in evidence properly considered as admitted by the factfinder because it was treated as evidence by the trial court and the parties and was referred to by a chemist who testified to its contents) *aff'd*, 717 S.W.2d 314 (Tex. Crim. App. 1986). We overrule Robles's third point.

## IV. CONCLUSION

Having overruled all three of Robles's points, we affirm the trial court's judgments.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 12, 2013