**Julia Ann SCHLOTTACH,
Petitioner/Respondent,**

v.

**Wayne Arnold SCHLOTTACH,
Respondent/Appellant.**

No. 63814.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 19, 1994.

Michael P. Bastian, St. Louis, for respondent-appellant.

D. Eugene Dalton, Jr., St. Charles, for petitioner-respondent.

GRIMM, Presiding Judge.

Husband appeals the trial court's order granting a decree of dissolution. We affirm.

Husband raises four points. They allege the trial court erred in: (1) granting a dissolution decree when he denied the marriage was broken, 2) enforcing the settlement agreement because it was procured by fraud and undue influence, (3) approving the settlement agreement, and (4) awarding attorney fees to wife.

## I. Background

Husband and wife were married on May 24, 1980. They have one child who was about 12 years old when the hearing was held.

This was husband's third marriage; his two previous marriages also resulted in divorce. In both of those, he entered into property settlement agreements.

The parties have had problems for a number of years. They had marital counseling on "more than one occasion." In 1986 or 1987, the parties separated. At that time, wife purchased a duplex in her own name. Husband signed a waiver of marital rights; it was his "intention that, if [their] situation led

to a divorce, [wife] would have that property as her property." The parties lived apart about a year before reconciling.

In addition, husband was not financially responsible. For example, he purchased a condo at the Lake of the Ozarks. Unknown to wife, he financed the down payment and made no payments for five years. Nor did he timely pay the taxes on the condo. Also, he has had, and quit, numerous jobs. On the other hand, wife has worked for the same employer for 18 years.

As a result of husband's financial irresponsibility for the last seven years of their marriage, the parties had separate checking accounts and separate charge accounts. This came about because husband failed to pay his bills and gave at least one bad check.

Early in 1992, the parties were not getting along and were having further difficulties. They discussed the possibility of divorce. Also, wife wanted to move into a new house. One was selected and wife made a down-payment.

In May, wife saw an attorney about a divorce but did not take any action. In mid–1992, the parties first started discussing a property settlement. When wife returned to attorney's office in October, 1992, the parties had "reached an agreement that was substantially the same as what's been incorporated into" the property settlement agreement. The only change concerned the handling of wife's life insurance; it was left in trust for their daughter instead of going to husband for the benefit of daughter.

Attorney prepared the agreement. On Wednesday, October 21, wife gave husband the proposed agreement. At that time, she "said it's everything we've ever discussed . . . and we'd talk about it later."

Thursday evening, husband and wife met at a Taco Bell. Their daughter and a niece were also present. They discussed the agreement; it was "pretty heated." They then went to wife's place of employment and had further heated discussions. Wife told him that if he did not sign the agreement, she would lose her down-payment and the new house.

Friday morning, October 23, husband, wife, and a notary public met. No discussions took place other than who should sign first and where to sign. No threats or statements were made to get husband to sign, nor did he seem reluctant to sign. Husband signed both the property settlement agreement and the entry of appearance and waiver. Wife also signed the agreement, as well as the petition for dissolution of marriage. Notary executed these documents.

On October 27, the petition and entry of appearance were filed in circuit court. The cause was set for an uncontested hearing on December 18. On December 16, husband deposited with the circuit court his answer and motion to rescind settlement agreement. Wife filed several motions, including one to enforce the agreement.

On March 23, 1993, the trial court took up all motions and the petition and conducted a hearing. On April 5, 1993, the trial court entered its dissolution decree. In the decree, the trial court found that husband had entered into the settlement agreement freely and voluntarily; therefore, it denied husband's motion to rescind and incorporated the terms of the settlement agreement into the decree.

II.  Entering and Enforcing the Decree

We consider husband's first and second points together. They allege the "trial court erred in [1] entering a decree based upon [husband's] entry of appearance . . . and upon the terms of the settlement agreement, because husband filed an answer and affirmative defense denying that the marriage was irretrievably broken . . . [, and 2] enforcing the marital settlement agreement because husband proved that the agreement was procured by fraud and undue influence and . . . should be rescinded."

█ In his answer, husband alleged that the parties' marriage was not irretrievably broken. When a party makes such a denial, § 452.320.2, RSMo 1986, requires a trial court to consider all relevant factors. To grant a dissolution decree, the trial court must make a finding as to whether the marriage is irretrievably broken, and the peti-

tioner is required to satisfy one or more of five conditions. § 452.320.1 and .2.

Here, wife testified that the marriage was irretrievably broken. In addition, the trial court heard the evidence set forth above. Suffice to say, this evidence was sufficient to enable the trial court to find that husband "has behaved in such a way that [wife] cannot reasonably be expected to live" with him. *See* § 452.320.2(1)(b). The trial court made the required finding that the marriage was irretrievably broken.

■ Nor is there any evidence of fraud. In the settlement agreement, the following clause was set out:

> **Voluntary Agreement:** Each party acknowledges that each of them is making this agreement of his or her own free will and that no coercion, force, pressure or undue influence has been used against either party in the making of this agreement.

Husband attended college for two years and has an associate degree in business. He had the agreement for two days. Further, at the hearing, husband acknowledged that this clause appeared on the same page as his signature. Also, the record reveals that husband was in agreement with most of the provisions and was at least aware of the others when he signed it. Nothing in the record reflects that wife misrepresented any provision.

■ In the argument portion of his brief, husband raises another contention. He alleges that this "case was never properly 'filed' so as to give the trial court jurisdiction to proceed upon the entry of appearance by" husband. For this contention, he relies on § 452.311.* This section states:

> A petition is not filed within the meaning of supreme court rule 53.01 in any cause of action authorized by the provisions of this chapter, unless [1] a summons is issued forthwith as required by supreme court rule 54.01, [2] a verified entry of appearance of respondent is filed or [3] an attorney files an entry of appearance on behalf

of respondent. (brackets and numbers added].

Here, a summons was issued but returned "non est." Husband argues that § 452.311 requires "a summons be issued, *and* a verified entry of appearance or an attorney files an entry of appearance on behalf of the respondent." (emphasis added). We disagree.

Section 452.311 does not require a summons to be issued in every case. Rather, it is only one of three ways to comply with the statute.

Here, husband signed a verified entry of appearance waiving "service of process as well as notice of hearing of this cause." Further, at the hearing, husband admitted that when he signed the entry of appearance, he received a copy of the petition. Wife filed this entry with the circuit clerk, thereby meeting the requirements of § 452.311. The trial court was not without jurisdiction to proceed. Points denied.

### III. Unconscionability

■ In his third point, husband contends the "trial court erred in approving the marital settlement agreement, enforcing it and finding it not to be unconscionable, because [1] the trial court did not consider the respective economic circumstances of the parties, and [2] the agreement distributed an unconscionable percentage of assets to wife."

Husband first argues that the trial court improperly applied the law by refusing to consider all the statutory factors of § 452.330 governing property division. Specifically, he contends the court did not consider the economic circumstances of the parties.

Suffice to say, the trial court was not required to apply the factors of § 452.330 here. In *Peirick v. Peirick,* 641 S.W.2d 195, 196–97 (Mo.App.E.D.1982), we held that the statutory factors of § 452.330 "apply when *in the absence of any agreement* the trial court must 'divide the marital property in such proportions as the court deems just....'" (citation omitted) (emphasis added). However, here, the property division was pursuant to the parties' settlement agreement. The

* All statutory references are to RSMo Cum.Supp. 1993, unless otherwise indicated.

court is bound by that agreement unless it finds the agreement is unconscionable. *Id.* at 196–97. Here, the trial court stated, "The Marital Settlement Agreement entered into by the parties ... is found not to be unconscionable." Thus, the trial court applied the appropriate standard.

■ Next, husband argues that the settlement agreement gave wife an unconscionable percentage of the assets. Unconscionability is defined as "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Id.* at 197.

During the hearing, husband testified that when he signed the settlement agreement, he was aware that it included a provision that he and wife agreed that the division of their property was an equitable division. The trial court, after hearing all the evidence, concluded that husband entered into this agreement "freely and voluntarily." This finding is supported by the record, and we will not disturb it on appeal.

Further, there is evidence in the record supporting an approximate 60/40 split of assets in favor of wife. Considering husband's financial irresponsibility, he has not shown that the trial court's award was unconscionable. Point denied.

### IV. Attorney Fees

■ In his fourth point, husband alleges the trial court erred in awarding attorney fees to wife because she "appropriated virtually all of the cash assets of the estate and was in a position to bear her own attorneys fees."

"Only on a showing that the trial court abused its broad discretion in ordering ... one party to a dissolution to pay the attorney fees of the other party, will an appellate court overturn the trial court order." *Mistler v. Mistler*, 816 S.W.2d 241, 256 (Mo.App. S.D.1991).

"To show an abuse of discretion ..., the complaining party has the burden to show that the order is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of jus-

tice and indicate a lack of deliberation.'" *Id.* (citation omitted). On review of the entire record, husband has not met this burden. The trial court did not abuse its broad discretion in ordering husband to pay wife's attorney fees. Point denied.

The trial court's judgment is affirmed.

CARL R. GAERTNER and AHRENS, JJ., concur.