**Sook Hee YUN, Respondent,**

v.

**Young Jin YUN, Appellant.**

No. WD 50343.

Missouri Court of Appeals,
Western District.

Aug. 29, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1995.

Application to Transfer Denied
Nov. 21, 1995.

Ray E. Sousley, Kansas City, for appellant.

David D. Lodwick, Excelsior Springs, for respondent.

Before HANNA, C.J., P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This dissolution action raises issues of jurisdiction and child support. Young Jin Yun appeals from the trial court's judgment of dissolution.

The judgment is affirmed.

On November 1, 1986, the parties, who were both living in Missouri, traveled to a church in Wyandotte County, Kansas and participated in a wedding ceremony as bride and groom, officiated by a minister. After the ceremony, they lived in Gladstone, Missouri. There is a conflict in the testimony about whether or not a marriage license was issued prior to the ceremony. There is no evidence that the ceremony was recorded on the license, and then registered. Mr. Yun says no license was obtained. Mrs. Yun understood that a license was obtained before the ceremony, but that Mr. Yun refused to record it after the ceremony. She said Mr. Yun did not want to register the marriage at that time because Mrs. Yun was not a citizen. The parties agree that after the ceremony and until they separated in December, 1992, they publicly held themselves out as husband and wife. The evidence shows that a marriage license was subsequently obtained by Mr. Yun in February, 1990, and on June 26, 1990, the license was filed with the State of Kansas. The license falsely indicated that the marriage ceremony had taken place on June 3, 1990.

On February 2, 1993, Mrs. Yun filed her petition for divorce. Mr. Yun filed a cross-petition for dissolution. In her petition, Mrs. Yun alleged that the parties participated in a marriage ceremony on November 1, 1986. Mr. Yun admitted that the parties were married in his answer, claiming, however, that the marriage commenced on June 3, 1990. The trial court found that the parties were married on November 1, 1986, and that the marriage was registered on June 3, 1990. The trial court divided the parties' property and awarded child support to Mrs. Yun in the amount of $500.00 per month. Mr. Yun appeals.

On appeal, Mr. Yun claims that the trial court erred in failing to dismiss the petition and cross-petition for dissolution of marriage because the court lacked jurisdiction to enter the decree of dissolution since there was no valid marriage. We review this court-tried case in accordance with the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and we affirm the trial court's judgment unless it is against the weight of the evidence or erroneously declares or applies the law.

### Judicial Admission

Mr. Yun contends the parties were never married and that therefore there was no jurisdiction over the property of the parties. Mr. Yun did not raise the issue of the validity of the marriage until the dissolution hearing. Mrs. Yun contends that Mr. Yun

judicially admitted the marriage in his answer and cross-petition, and that no objection to subject matter jurisdiction can now be raised. We disagree. Mr. Yun's answer and cross-petition does not bind him as a judicial admission. It is true that a judicial admission forecloses further inquiry as to the matter in question. *In re Marriage of Maupin,* 829 S.W.2d 125, 127 (Mo.App.1992). Allegations in a petition, admitted in an answer, are judicial admissions on that issue. *Costello v. Costello,* 643 S.W.2d 81, 82 (Mo.App.1982). A judicial admission waives or dispenses with the production of evidence and "concedes for the purpose of the litigation that a certain proposition is true." *Hewitt v. Masters,* 406 S.W.2d 60, 64 (Mo.1966). *Id.* at 127. However, a party's appearance and answer does not waive objection to subject matter jurisdiction. *Wambugu v. Wambugu,* 1995 WL 129198 (Mo.App.E.D.1995) (quoting *Davis v. Davis,* 799 S.W.2d 127, 130 (Mo.App.1990)). We have been provided no authority to the effect that an admission of facts which constitute a basis of jurisdiction precludes a party from later challenging jurisdiction. Therefore, we are not persuaded that Mr. Yun's answer and cross-petition admitting the marriage may be held to preclude his later objection to subject matter jurisdiction.

## Validity of the Marriage

Missouri law provides that the validity of a marriage is determined substantively, though not procedurally, by the law of the place where it is contracted. *Taylor v. Taylor,* 355 S.W.2d 383, 383 (Mo.App.1962); *see also* 52 Am.Jur.2d *Marriage* § 80 (1970). Kansas law provides that a marriage may be validly solemnized and contracted in Kansas after a marriage license has been issued. Kan.Stat.Ann. § 23–104a (1988). The Kansas statutes do not, however, specifically provide that a marriage ceremony conducted without a license is void.[1]

On the technical issue of the validity of the marriage, *Hartman v. Valier & Spies Mill-*

ing Co., 356 Mo. 424, 202 S.W.2d 1 (Mo.1947) is helpful. In *Hartman* a claim for death benefits under the Workmen's Compensation Act was brought on account of a fatal accident to the claimant's purported husband. Claimant and Mr. Hartman, both residents of Missouri, participated in a wedding ceremony in Belleville, Illinois. Mrs. Hartman testified that they had obtained a marriage license prior to the ceremony, although the records of the county clerk in Belleville failed to confirm the application for a license by Mr. Hartman, or the issuance of a license. Illinois law, like Kansas law, while requiring the issuance of a license as a prerequisite to marriage, did not specifically provide that the lack of a license would void the marriage. The couple lived together as husband and wife after the ceremony, and there was evidence that Hartman obtained insurance designating Mrs. Hartman as his wife. The Labor and Industrial Relations Commission found in favor of employer and insurer, and against claimant, specifically finding that she had failed to prove sufficient compliance with marriage formalities. The circuit court reversed. The Missouri Supreme Court affirmed the circuit court's finding that the parties were legally married, noting the strong presumption in favor of marriage.

The case of *Nelson v. Marshall,* 869 S.W.2d 132, 135 (Mo.App.1993), relied upon by Mr. Yun, does not require a different result. In that case, a couple chose to get married while Mr. Marshall, the proposed groom, was very ill and confined to the hospital. The hospital chaplain, after checking with authorities, informed the couple that, in order to get married immediately, they would be required to get a waiver of the three day waiting period from a judge so that the license could promptly issue. The parties decided to proceed with a ceremony that very day, in spite of the absence of a license. They intended to complete the paperwork after the ceremony. The next evening Mr. Marshall died. No marriage license was

---

1. Kansas also recognizes common law marriages. *Brown v. Brown,* 878 S.W.2d 94, 97 (Mo.App.1994). The State of Missouri has refused to recognize a common law marriage of another state where the parties were residents of Missouri during the common law period. *Enlow*

*v. Fire Protection Sys., Inc.,* 803 S.W.2d 148, 150 (Mo.App.1991). Moreover, the issue of common law marriage is not involved where the alleged marriage was ceremonial and not purely contractual. *Hartman v. Valier & Spies Milling Co.,* 356 Mo. 424, 202 S.W.2d 1 (Mo.1947).

ever obtained. The court held there was no legal marriage, relying on the language of § 451.040(1).[2] *Nelson* is not applicable here because it involves a Missouri ceremony rather than a ceremony occurring in another state, where we look to the law of the other state. In addition, in *Nelson,* the court *expressly* declined to address the issue of whether, had Mr. Marshall survived and later obtained and recorded a license, a valid marriage would be declared. *Id.* at 136.

■ There is a strong public policy in favor of marriage. In *Hodge v. Conley,* 543 S.W.2d 326, 329-30 (Mo.App.1976), the court looks at the presumption resulting therefrom, stating:

> [A] presumption of a ceremonial marriage arises upon a showing of open cohabitation, declaration and conduct by the parties and general reputation, despite inability to show a marriage license or any record of the issuance of one.... 'The presumption of marriage is in favor of the innocence and good morals of the parties concerned.' (Citations omitted).

The presumption in favor of marriage is very strong. *Forbis v. Forbis,* 274 S.W.2d 800, 806 (Mo.App.1955). Mr. Yun has not met his burden of rebutting the presumption. Mrs. Yun's testimony assumes, but does not establish, that a license was obtained prior to the marriage ceremony. However, the fact that Mr. Yun testified that no license was obtained before the marriage does not make the trial court's finding that there was a marriage against the weight of the evidence. *Hartman,* 202 S.W.2d at 6-7. Mr. Yun's testimony as to the lack of a license, standing alone, without independent corroboration, could be disbelieved by the court. *Vanderson v. Vanderson,* 668 S.W.2d 167, 171 (Mo. App.1984). The court could have concluded that a license was obtained before the marriage by Mr. Yun, as Mrs. Yun understood, and then simply not recorded after the ceremony. Indeed, it seems unlikely that the reputable clergyman conducting the ceremo-

ny would have subjected himself to the criminal penalties provided under Kansas law (Kan.Stat.Ann. § 23–111 (1988)) for performing an unlicensed ceremony. In view of these facts, together with the substantive presumption, the trial court's finding was not against the weight of the evidence. *Hartman,* 202 S.W.2d at 6-7. Further, whether or. not a license was issued prior to the ceremony, *Hartman* suggests that, applying Kansas law, the marriage ceremony was not void, and the trial court did not err.

### Equitable Estoppel

■ Moreover, even if it were conceded that no license was obtained before the ceremony, Mr. Yun's efforts to argue there was no marriage must fail. The record shows that Mr. Yun does not stand before the court as a party entitled to deny the marriage. Mr. Yun engaged in a marriage ceremony, cohabitation, and other conduct consistent with the existence of a marriage relationship. He obtained the benefits of marriage to Mrs. Yun, and lived the life of a married man. He participated in bringing children into the marriage and did not disavow the existence of a marriage. Whether or not he obtained a license before the 1986 ceremony, he obtained one later, and recorded the marriage. Mr. Yun never, until after Mrs. Yun decided to seek dissolution, informed Mrs. Yun that he would take the position there was no marriage. He now seeks to avoid the marriage only to deprive Mrs. Yun of the relief which the law would provide her. He has no equitable basis to seek to avoid the marriage; therefore, he is precluded by equitable estoppel from raising an objection to the court's subject matter jurisdiction.

*In re Marriage of Sumners,* 645 S.W.2d 205 (Mo.App.1983), applies the principle of equitable estoppel to an issue of the validity of a second marriage after a divorce of questionable validity. The court, quoting *Spellens v. Spellens,* 49 Cal.2d 210, 317 P.2d 613 (1957), states the public policy behind applying the doctrine of estoppel to prevent a

---

**2.** Section 451.040(1) RSMo 1994 provides as follows:

   1. Previous to any marriage in this state, a license for that purpose shall be obtained from the officer authorized to issue the same, and no

marriage hereafter contracted shall be recognized as valid unless the license has been previously obtained, and unless the marriage is solemnized by a person authorized by law to solemnize marriages.

person from denying a questionable second marriage, stating:

"... The theory is that the marriage is not made valid by reason of the estoppel but that the divorced person may not take a position that the divorce or latter marriage was invalid.... 'To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding would be a flagrant invitations to others to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status'...."

The same policy considerations apply in the instant case. To allow Mr. Yun to defeat the court's jurisdiction on the basis that Mr. Yun was never bound to Mrs. Yun in marriage would be to encourage persons to take advantage of the marital relationship and, at the same time, avoid the responsibilities of the marital state upon dissolution of the union, at the expense of the other party, for the purpose of circumventing the intent of the law.

For all the foregoing reasons, we conclude that the trial court did not err in failing to dismiss the petition and cross-petition. The court had jurisdiction over the relationship between the parties.

### Child Support

■ Mr. Yun also claims that the trial court erred in awarding Mrs. Yun child support in the amount of $500.00 per month. He contends that no Form 14 was submitted to the trial court and there was no specific finding that the Form 14 amount would be unjust or inappropriate. After hearing all of the evidence, the trial court asked each party to submit a Form 14 for child support calculation. The record before us does not contain a Form 14. However, Mrs. Yun represents to this court that she submitted a Form 14, and the trial court's order showed that the child support amount was calculated pursuant to Form 14. In any event, Mr. Yun has not preserved this point for review because he admits that he did not submit a Form 14. One who wishes to complain about a child support calculation must have submitted a Form 14 to the trial court. *Ibrahim v.*

*Ibrahim,* 825 S.W.2d 391, 398 (Mo.App.1992). Thus, Mr. Yun waives appellate review of this point. Point II is denied.

The judgment is affirmed.

All concur.