Carmen Murphy SUTTON, Respondent,

v.

Luther SUTTON, Appellant.

No. WD 63256.

Missouri Court of Appeals,
Western District.

Sept. 21, 2004.

---

Allen S. Russell, Kansas City, MO, for Appellant.

Cindy L. Whitton, Southlake, TX, for Respondent.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATIRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

Luther Sutton appeals the judgment of the trial court dissolving his marriage with Carmen Murphy Sutton. Mr. Sutton claimed in his answer to Ms. Sutton's petition for dissolution and throughout the proceedings that the parties were not married. Mr. Sutton claimed that he was married to another woman, Bernice Sutton, by common law when the marriage between Carmen and himself was solemnized in Roanoke, Virginia, on August 6, 1998, and, thus, that he was legally incapable of marrying Carmen. The judgment of dissolution is affirmed.

## Facts

Mr. Sutton and Carmen [1] were married in a solemnizing ceremony in Roanoke, Virginia, on August 6, 1998, and resided together as husband and wife. In December 1999, Bernice filed for dissolution of marriage in Wyandotte County, Kansas, claiming that she and Mr. Sutton were married as a result of their common-law relationship. The Kansas District Court conducted a hearing on Bernice's petition to establish the marriage on May 26, 2000, to determine whether Mr. Sutton and Bernice were married as alleged. The court found on January 16, 2001, that Mr. Sutton and Bernice were married by application of common law beginning January 1, 1981, and that the marriage then existed. In the mean time, Mr. Sutton and Carmen separated on February 8, 2001. The Kansas court then entered its judgment dissolving the marriage of Mr. Sutton and Bernice on February 16, 2001.

Carmen filed her petition in Jackson County, Missouri, on April 11, 2001, seeking dissolution of her marriage with Mr. Sutton. The Jackson County Circuit Court conducted a hearing to determine whether Mr. Sutton and Carmen were married. The court, on July 24, 2002, determined that the parties were married in accordance with Virginia law on August 5, 1998, in Roanoke, in a solemnizing ceremony and that the marriage was recorded in accordance with the laws of the Commonwealth of Virginia. The court also found that no evidence was presented to the District Court of Wyandotte County, Kansas, that Mr. Sutton was married in Virginia, and no evidence was presented that the Kansas court was aware of the marriage of Mr. Sutton to Carmen, solem-

---

1. This opinion will refer to Carmen Sutton and Bernice Sutton by their first names for ease of reading.

nized and recorded as required by Virginia law. The Jackson County Circuit Court also found that "the Judge of the District Court of Wyandotte County, Kansas, could not have arrived at his conclusion if he was aware of the prior marriage certified from Virginia." Having found that the parties were married, the court entered its judgment dissolving the marriage of the parties, identifying and setting aside the separate property of the parties, identifying the marital property and dividing it, dividing the debt, and entering other orders affecting the parties' financial status. Mr. Sutton appeals the judgment.

## Standard of Review

"This court will review the judgment of the trial court under the standard of review applicable to any other court-tried case." *Aurich v. Aurich*, 110 S.W.3d 907, 911 (Mo.App. W.D.2003)(quoting *Eckhoff v. Eckhoff*, 71 S.W.3d 619, 622 (Mo.App. W.D. 2002)). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court views the evidence and inferences in the light most favorable to the trial court's judgment and disregards all contrary evidence and inferences. *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 96 (Mo.App. W.D.2003).

## Point I

■ Mr. Sutton claims that the trial court erred in determining that a valid marriage existed between Carmen and him, a condition precedent to the court's judgment of dissolution and division of property, because he was already married to another woman and legally incapable of marrying Carmen when the ceremony solemnizing the marriage was performed. Should the marriage between Mr. Sutton and Carmen be void, the trial court lacked jurisdiction to terminate the marriage and divide the property and debt.

That Mr. Sutton and Carmen obtained a marriage license in Virginia, and solemnized the marriage by ceremony in Roanoke, and that the return on the marriage license was completed and filed by a person authorized by Virginia law to perform the marriage ceremony are not disputed. Neither does Mr. Sutton contest that the marriage was consummated and that the parties resided for several years as husband and wife. No evidence was presented that Carmen knew of the purported common law marriage between Mr. Sutton and Bernice when the parties were married in Virginia, and the record is void of when Carmen learned of Mr. Sutton's relationship with Bernice.

Whether the judgment of the District Court in Wyandotte County, Kansas, finding that Mr. Sutton and Bernice were married before Mr. Sutton and Carmen's marriage was proper or whether Mr. Sutton's marriage to Carmen was void because of Mr. Sutton's marriage to Bernice need not be decided here. This case is similar to that of *Yun v. Yun*, 908 S.W.2d 787 (Mo. App. W.D.1995). In *Yun*, the parties lived in Missouri but were married in Kansas. After the ceremony, they continued to live in Missouri. Mr. Yun claimed that he never obtained a marriage license as required by Kansas law (either before or after the solemnization ceremony), and no evidence that the ceremony was recorded as required by Kansas law was presented. *Id.* at 788. Ms. Yun filed her petition for divorce and Mr. Yun cross-appealed. He admitted in his answer that the parties were married. The trial court found that the parties had been married and that the marriage had been registered approximately four years after the event. On appeal, Mr. Yun claimed that the trial

court erred in failing to dismiss the petition and cross-petition for dissolution of marriage because the court lacked jurisdiction to enter the judgment of dissolution since no valid marriage existed between the parties. *Id.* Thus, he argued, the court lacked subject matter jurisdiction. Mr. Yun effectively sought to void the marriage. This court concluded that Mr. Yun's attempts were to deprive the relief the law provided to Ms. Yun. *Id.* at 790. The court noted that Mr. Yun engaged in the marriage ceremony, cohabitation, and other conduct consistent with the existence of a marriage. *Id.* He obtained the benefits of marriage; issues were born of the marriage, and he helped rear them; his conduct was consistent with the existence of the marital relationship over several years; and he otherwise held himself out as husband in the relationship. *Id.* This court expressed that Mr. Yun had no equitable basis to seek to avoid the marriage and determined that he was equitably estopped from raising an objection to the trial court's subject matter jurisdiction. *Id.*

The *Yun* case relied on the Southern District case of *In re the Marriage of Sumners*, 645 S.W.2d 205 (Mo.App. S.D. 1983), for holding that Mr. Yun was estopped from denying his marriage to Ms. Yun. In *Sumners*, Mr. Sumners had obtained a divorce in Nebraska. The Nebraska judgment of dissolution provided that neither party could marry again within six months following entry of the judgment. *Id.* at 206. Nebraska law provided that the judgment of dissolution would not be final for six months following entry of the judgment. *Id.* at 208. Mr. Sumners, in contravention of the judgment, remarried in Iowa less than six months after entry of the Nebraska judgment of dissolution. *Id.* at 207. The Southern District found that Mr. Sumners was estopped in the subsequent divorce action in Missouri

from asserting that the second marriage was void because he had married within six months of the Nebraska divorce judgment. The court, noting that Mr. Sumners had produced the dilemma, stated, "a person who obtains a divorce and then remarries will not be permitted to attack the validity of the divorce in order to free himself from his obligations to his second spouse." *Id.* at 209 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 74, Comment b (1971)). The court further stated, "the person who produced the misleading situation cannot, as against persons who may (or may not) have thought the divorce to be valid, set up its invalidity when later that invalidity seems advantageous to him." *Id.* (quoting R. LEFLAR, AMERICAN CONFLICTS LAW § 226 (1977)). The court explained the public policy behind applying the doctrine of estoppel to prevent a person from denying a questionable second marriage:

> The theory is that the marriage is not made valid by reason of estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid.... "To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding [would be] a flagrant invitation to others to attempt to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status." (citation omitted).

*Id.* at 210 (quoting *Spellens v. Spellens*, 49 Cal.2d 210, 317 P.2d 613, 619 (1957)).

The same policy considerations apply in this case. Mr. Sutton is estopped from asserting that his marriage to Carmen is void. Like the appellant in *Yun*, Mr. Sutton "seeks to avoid the marriage only to deprive [Carmen] of the relief which the law would provide her. He has no equitable basis to seek to avoid the marriage."

Mr. Sutton is precluded by equitable estoppel from raising the validity of his marriage to Carmen and thereby questioning the subject matter jurisdiction of the court. Therefore, the trial court had jurisdiction to hear the dissolution proceeding and enter its judgment dividing the marital property, identifying the non-marital property and declaring its owner, and identifying and dividing the marital debt. Point I is denied.

## Point II

■ In his second point on appeal, Mr. Sutton claims that the trial court erred in entering its judgment dissolving his marriage to Carmen because no evidence was presented that the marriage was irretrievably broken and could no longer be preserved.

■ Section 452.350, RSMo 2000, provides that a trial court shall enter a judgment of dissolution of marriage if, among other things, it finds that "there remains no reasonable likelihood that the marriage can be preserved and that therefore the marriage is irretrievably broken." In her petition for dissolution of marriage, Carmen alleged that the marriage of the parties was irretrievably broken. Mr. Sutton denied the allegation in his answer. Section 452.320.2, RSMo 2000, provides that when one party has denied under oath or affirmation that the marriage is irretrievably broken, the trial court is required to find whether the marriage is irretrievably broken. *Koon v. Koon,* 969 S.W.2d 828, 830 (Mo.App. S.D.1998). To make such finding, the court must be satisfied that the petitioner has established one or more of the five factual scenarios provided under section 452.320.2(1):

(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

(c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

(d) That the parties to the marriage have lived separate and apart by mutual consent for a continuous period of twelve months immediately preceding the filing of the petition;

(e) That the parties to the marriage have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition.

*Love v. Love,* 72 S.W.3d 167, 171–72 (Mo. App. S.D.2002). While the trial court must make a finding that the marriage is irretrievably broken, it is not, however, required to make a finding concerning the specific statutory ground upon which it based that conclusion. *Koon,* 969 S.W.2d at 830; *In re Marriage of Thompson,* 894 S.W.2d 255, 256 (Mo.App. S.D.1995).

In this case, substantial evidence was presented to support a finding under section 452.320.2(1)(b) that Mr. Sutton had behaved in such a way that Carmen could not reasonably be expected to live with him. Carmen testified at trial that Mr. Sutton had abused her five or six times during the marriage. During one incident, Mr. Sutton choked Carmen and beat the back of her head against a wall. He then followed Carmen to a school where she was substitute teaching and hit, kicked, and beat her in the parking lot. Mr. Sutton was ultimately convicted of assault for the incident at the school. As a result of the abuse during the marriage, Carmen obtained three orders of protection against Mr. Sutton. Additionally, the evidence re-

vealed that Mr. Sutton was financially irresponsible at times. He would not pay his bills and often incurred overdraft charges from the bank. As a result, Carmen would have to pay his bills, and she ultimately opened her own separate checking account. Substantial evidence supported the trial court's finding that the marriage was irretrievably broken. *See Love*, 72 S.W.3d at 169, 172 (where husband had been physically violent toward wife and children and violated restraining order on three occasions, evidence supported finding that marriage was irretrievably broken); *Schlottach v. Schlottach*, 873 S.W.2d 928, 930, 931 (Mo.App. E.D.1994)(where, among other things, husband was not financially responsible, failing to pay his bills and giving at least one bad check, evidence supported finding that marriage was irretrievably broken). Point II is denied.

The judgment of the trial court is affirmed.

HOWARD, P.J., and BRECKENRIDGE, J. concur.