

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CHRISTINA M. ALDRICH, | ) | |
| | ) | |
| Respondent, | ) | WD84127 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | November 2, 2021 |
| JONATHAN E. ALDRICH, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Johnson County, Missouri
### The Honorable Brent F. Teichman, Judge

### Before Division Four: Cynthia L. Martin, Chief Judge,
### Mark D. Pfeiffer, Judge, and James E. Welsh, Senior Judge

This dissolution proceeding demonstrates the principle that equity may, in certain circumstances, intervene to estop a party from denying the validity of a marital relationship. Though such estoppel does not itself make a marriage *valid*, it prevents a party to that marriage from taking the position that the marriage is *invalid*.

Mr. Jonathan E. Aldrich ("Aldrich") appeals from the Judgment and Decree of Dissolution entered by the Circuit Court of Johnson County, Missouri ("trial court"), dissolving his marriage to Ms. Christina M. Aldrich ("Christina"). We affirm.

## Factual and Procedural History[1]

On October 25, 1991, the couple held a formal wedding ceremony in Jackson County, Missouri, attended by approximately 100 guests including both Aldrich's and Christina's family. At that time, Christina was nineteen years old and Aldrich was twenty-nine years old. The ceremony was held in a church and officiated by a minister who was authorized by law to solemnize marriages. During the ceremony, the couple exchanged vows and wedding rings.

The church provided the couple with a "Marriage Covenant," which was signed by Aldrich and Christina, witnesses, and the minister who officiated the ceremony. After the ceremony, Christina changed her surname on her driver's license and social security card using the marriage covenant as proof of the marriage as Christina believed in good faith that she was lawfully married. Although Aldrich told Christina that he would personally "file" the marriage covenant and Christina relied upon Aldrich's representation to that effect, he never filed the marriage covenant or sought any marriage licensing documentation from the State of Missouri.

In February of 2017, Christina discovered that Aldrich had requested sexually explicit photographs from another woman. On December 2, 2018, the couple separated.

All told, Aldrich and Christina remained together for twenty-seven years. They lived together, acquired property together, held themselves out as married, and had three children. The warranty deed to their family home granted them ownership as husband and wife.[2] The deed of trust they executed to obtain a mortgage on their family home was granted to them as husband and wife, and so too were subsequent deeds of trust they obtained to refinance their mortgage.

---

[1] In the appeal from a bench-tried case, we view the facts in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded. *Guerra v. Locarno Partners, LP*, 577 S.W.3d 900, 904 (Mo. App. W.D. 2019).

[2] "'In Missouri, a conveyance of real property to a husband and wife as co-grantees is presumed to create a tenancy by the entirety if there are no limiting words in the operative clauses of the deed.'" *Bakewell v. Breitenstein*, 396 S.W.3d 406, 412 (Mo. App. W.D. 2013) (quoting *Ronollo v. Jacobs*, 775 S.W.2d 121, 123 (Mo. banc 1989)).

Christina was the primary beneficiary of Aldrich's life insurance policy and "children of marriage" were named as the contingent beneficiaries of the same life insurance policy. The couple celebrated wedding anniversaries of their October 25, 1991 wedding ceremony. And, before and during the pendency of this litigation in the trial court, Aldrich represented on tax filings to the State of Missouri and the United States Internal Revenue Service that he and Christina were husband and wife.

In 2019, Christina filed a petition for dissolution of the marriage in the Circuit Court of Johnson County, Missouri. For the first time since their church wedding in 1991, Aldrich asserted the position in his responsive pleading that there was no "valid" marriage. Instead, Aldrich challenged the trial court's jurisdiction[3] to dissolve the marriage on the grounds that no marriage license was ever obtained or filed by the parties and, accordingly, the marriage was invalid from its inception. The trial court applied principles of equitable estoppel, concluded that Aldrich was estopped from denying the marriage, and issued a dissolution judgment in June 2020 that, in pertinent part, divided the property of the parties and awarded maintenance to Christina.

Aldrich appeals and seeks reversal of the judgment by way of continuing his attack on the trial court's authority to issue *any* judgment relating to an "invalid" marriage.

**Analysis**

Although Aldrich asserts three points on appeal, each of his claims of error turn on whether a valid marriage existed between Aldrich and Christina. The trial court ruled that, notwithstanding any purported invalidity of the marriage, Aldrich was estopped from denying its validity. The trial

---

[3] Following *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), Aldrich's argument is more properly referred to as a challenge to the trial court's "authority" to hear the subject dissolution proceeding; and, since Aldrich is asserting the claim that the statutory prerequisite (*i.e.,* statutory marriage license requirements) has not been met and such failure prohibits the trial court from exercising authority over the proceedings, Aldrich's claim is a non-jurisdictional claim. *See McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 477 (Mo. banc 2009).

court reasoned that because he engaged in a marriage ceremony, cohabited, bore children with Christina, enjoyed numerous benefits of marriage for twenty-seven years, and at all relevant times held himself out as married to Christina to banks, governmental agencies, and all others, Aldrich could not now disavow the marriage. We agree.

## Standard of Review

"'On review of a court-tried case, [we will] affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *ADB Cos. v. Socket Telecom, LLC*, 618 S.W.3d 237, 244 (Mo. App. W.D. 2021) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014)). "'A claim that the judgment erroneously declares or applies the law . . . involves review of the propriety of the trial court's construction and application of the law.'" *Pierce v. Mo-Kan Sheet Metal Workers Welfare Fund*, 616 S.W.3d 409, 413 (Mo. App. W.D. 2020) (quoting *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012)). "This Court applies *de novo* review to questions of law decided in court-tried cases." *Id.* (internal quotation marks omitted).

## I. Validity of the Marriage

Since 1921, Missouri has prohibited residents of this state from entering into common-law marriages.[4] *Thomson v. Thomson*, 163 S.W.2d 792, 795 (Mo. App. 1942). "To eliminate common-law marriages, the legislature implemented solemnization and license requirements," otherwise known as a ceremonial marriage. *Nelson v. Marshall*, 869 S.W.2d 132, 134 (Mo. App. W.D. 1993). The law governing ceremonial marriages in this state has, for the last century,

---

[4] "Common-law marriages shall be null and void." § 451.040.5. All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

4

required that a marriage license be obtained from an authorized officer[5] and that the marriage be solemnized by a person authorized by law to solemnize marriages. § 451.040.1.

Despite the abolition of common-law marriage in Missouri, "a presumption of a ceremonial marriage arises upon a showing of open cohabitation, declaration and conduct by the parties and general reputation, despite [an] inability to show a marriage license or any record of the issuance of one."[6] *Hodge v. Conley*, 543 S.W.2d 326, 329 (Mo. App. 1976); *see also Suddeth v. Hawkins*, 202 S.W.2d 572, 575 (Mo. App. 1947) ("[T]he ordinary presumption of marriage that obtains where parties have cohabited together and have held themselves out as man and wife" is not destroyed by the abolition of common-law marriages.). This presumption is one of the strongest in the law, although it may be overcome by a clear, cogent, and convincing showing of invalidity. *Forbis v. Forbis*, 274 S.W.2d 800, 806 (Mo. App. 1955). This presumption applies in any case where the validity of the marriage is challenged.[7]

The presumption that a ceremonial marriage exists is applicable in this case: Aldrich and Christina held a wedding ceremony attended by upwards of 100 attendees including their family and friends; they cohabited for twenty-seven years; they obtained title to and a mortgage for their family home as husband and wife; subsequent mortgages on the home were also acquired as husband and wife; over the years they filed tax returns under the category of "married filing jointly" and "married filing separately"; the couple's children, family, and friends believed them to be married; and they held wedding anniversaries commemorating their 1991 wedding ceremony.

---

[5] Per subsection 451.040.2, the license is issued by the recorder of deeds.

[6] "[T]he issue of common law marriage is not involved where[, as here,] the alleged marriage was ceremonial and not purely contractual." *Yun v. Yun*, 908 S.W.2d 787, 789 n.1 (Mo. App. W.D. 1995) (citing *Hartman v. Valier & Spies Milling Co.*, 202 S.W.2d 1 (Mo. 1947)).

[7] "When the validity of a marriage has been assailed in a divorce or other proceeding, our courts have applied a rule of law called a 'presumption.'" *In re Marriage of Sumners*, 645 S.W.2d 205, 208 (Mo. App. S.D. 1983).

But, it is undisputed, in fact agreed, that the parties did not obtain a marriage license prior to the October 25, 1991 wedding ceremony or at any time during their relationship. The unambiguous language of subsection 451.040.1 that declares that no marriage shall be recognized as valid unless a license has been obtained makes the license requirement mandatory and not merely directory. *See Nelson*, 869 S.W.2d at 135 ("Missouri is among the states whose 'licensing statute plainly makes an unlicensed marriage invalid.' [T]he court declines to follow those states which have declared their licensing provision as merely directory, and holds the absence of a marriage license as a fatal flaw.") (citations omitted). By failing to obtain a marriage license, the parties did not comply with the law of this state under subsection 451.040.1 to establish a valid marriage.

This is the crux of Aldrich's claim. He asserts that because Missouri does not recognize common-law marriage and a marriage license was never obtained, there was never a valid marriage between himself and Christina. And, therefore, the trial court erred in "dissolving" a marriage that never validly existed, distributing property that was never marital, and awarding maintenance to Christina who was never his spouse.

What Aldrich fails to appreciate is that his claims do not prevail simply by demonstrating the absence or non-issuance of a marriage license.[8] For, Aldrich is not in a position to challenge the trial court's authority based on the assertion that his presumptive ceremonial marriage to Christina was invalid *ab initio* because they failed to obtain a marriage license. Indeed, Aldrich is equitably estopped from lodging such a challenge.

---

[8] "[T]he doctrine of *ab initio* nullity of marriages is looked on with disfavor." *Nelson v. Marshall*, 869 S.W.2d 132, 135 (Mo. App. W.D. 1993) (citation omitted).

*II. Equitable Estoppel*

Generally, the application of equitable estoppel hinges upon the showing of "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Union Manor v. Mo. Dep't of Health & Senior Servs.*, 596 S.W.3d 673, 682 (Mo. App. W.D. 2020) (internal quotation marks omitted). In the marriage context, the requisite showing is no different. What is most important is the principle that the spouse who produced the misleading situation cannot, as against persons who believed in good faith that the marriage was valid, establish its invalidity when it becomes advantageous. *In re Marriage of Sumners*, 645 S.W.2d 205, 209 (Mo. App. S.D. 1983).

> *Yun v. Yun*, 908 S.W.2d 787 (Mo. App. W.D. 1995), is instructive:

> Moreover, even if it were conceded that no [marriage] license was obtained before the ceremony, [Husband's] efforts to argue there was no marriage must fail. The record shows that [Husband] does not stand before the court as a party entitled to deny the marriage. [Husband] engaged in a marriage ceremony, cohabitation, and other conduct consistent with the existence of a marriage relationship. He obtained the benefits of marriage to [Wife], and lived the life of a married man. He participated in bringing children into the marriage and did not disavow the existence of a marriage. . . . [Husband] never, until after [Wife] decided to seek dissolution, informed [Wife] that he would take the position that there was no marriage. He now seeks to avoid the marriage only to deprive [Wife] of the relief which the law would provide her. He has no equitable basis to seek to avoid the marriage; therefore, he is precluded by equitable estoppel from raising an objection to the court's subject matter jurisdiction.

*Id.* at 790. In *Sutton v. Sutton*, 143 S.W.3d 759 (Mo. App. W.D. 2004), we reiterated the public policy behind applying the doctrine of estoppel in the marriage context, stating:

> The theory is that the marriage is not made valid by reason of estoppel but that the estopped person may not take a position that the . . . marriage was invalid. . . . To hold otherwise protects neither the welfare nor morals of society but, on the contrary, such holding [would be] a flagrant invitation to others to attempt to

7

circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status.

*Id.* at 762 (internal quotation marks omitted). And, in reliance upon this oft-cited policy principle of equity and fairness, we ultimately concluded in *Yun v. Yun*:

> The same policy considerations apply in the instant case. To allow [Husband] to defeat the court's jurisdiction on the basis that [Husband] was never bound to [Wife] in marriage would be to encourage persons to take advantage of the marital relationship and, at the same time, avoid the responsibilities of the marital state upon dissolution of the union, at the expense of the other party, for the purpose of circumventing the intent of the law.
>
> [W]e conclude that the trial court did not err in failing to dismiss the petition and cross-petition. The court had jurisdiction over the relationship between the parties.

*Yun*, 908 S.W.2d at 791.

The same is true here. Despite Aldrich's current claim that he was never married to Christina, he did not challenge the validity of the marriage at any point preceding the commencement of this litigation. In fact, Aldrich held himself out as married and fully availed himself of the many benefits of marriage—for twenty-seven years. He enjoyed the intimate bond between spouses, brought children into the marriage, and had a devoted spouse who left her career behind to raise their children. He also enjoyed the protections of holding property as tenants by the entirety.[9] And, as the primary wage earner of the household, he took full advantage of the tax deductions afforded a married couple by filing as "married" instead of "single."

At all relevant times, Christina believed herself to be lawfully married and acted in good faith on that belief. She changed her surname using the marriage covenant to effectuate that change. She testified at trial that she relied on the validity of the marriage when entering into loan contracts that could be accelerated or defaulted if a misrepresentation was later discovered.

---

[9] "No lien can arise against the property from the pledge of one spouse, nor may either spouse encumber or adversely affect the estate without the other's assent." *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 467 (Mo. App. W.D. 1984).

8

Christina relied on the validity of the marriage when, for twenty-seven years, she did not enter the workforce full-time or pursue educational opportunities. Christina testified that she would not have cohabited nor bore children with Aldrich if they were not married, and these assertions are supported by the fact that the couple did not cohabit or have children until after their wedding ceremony. And, but for her good-faith belief that she was married, Christina would not have represented on tax filings to the State of Missouri and the United States government that she was married.

Despite the many benefits that he garnered, Aldrich declares that a marriage never existed between himself and Christina; that is, now that it is advantageous for him to so claim. If Aldrich is allowed to disavow the twenty-seven-year presumed marriage he shared with Christina, it would not only deprive Christina of the maintenance to which she is entitled but would effectively denominate their children as illegitimate, expose them to criminal and civil liability for income tax fraud, and place them in default with their creditors.

Based upon the facts presented by this record,[10] we hold that Aldrich is estopped from disavowing the validity of the marriage and the trial court properly exercised its authority to determine property, maintenance, and custodial issues relating to the relationship between the parties.

As all of Aldrich's points on appeal rest upon his premise that the marriage was not a "valid" marriage and we, like the trial court, have rejected that argument, Aldrich's points on appeal must fail.

---

[10] Equitable estoppel is, indeed, a principle of law that is applied on a fact-by-fact basis and the application of this legal principle depends upon the facts presented in each case. On the facts of *this* case, we conclude that the trial court correctly applied equitable estoppel in arriving at its judgment.

9

**Conclusion**

The trial court properly exercised its authority to enter its Judgment and Decree of Dissolution and that judgment is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Cynthia L. Martin, Chief Judge, and James E. Welsh, Senior Judge, concur.

10